**Richard Wayne SHANNON,**
**Plaintiff-Appellee,**

v.

**Bill LESTER et al.,**
**Defendants-Appellants.**

**No. 74–2171.**

United States Court of Appeals,
Sixth Circuit.

July 8, 1975.

Clinton H. Swafford, Swafford, Davis & Peters, Winchester, Tenn., for defendants-appellants.

H. Thomas Parsons, J. Stanley Rogers, Manchester, Tenn., for plaintiff-appellee.

Before WEICK, CELEBREZZE and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

The suit in the District Court was brought under the Civil Rights Act, for damages against a State Highway Patrolman, the Sheriff of Warren County, Tennessee, and his Deputy. 28 U.S.C.

§ 1343 and 42 U.S.C. § 1983. The plaintiff recovered judgment upon the verdict of the jury for compensatory damages in the amount of $10,000. The defendants have appealed, asserting that the verdict was excessive; that the Court erred in its instructions to the jury on the issue of damages; and that the Court erred in refusing to direct a verdict in favor of the defendants. We reverse and remand for a new trial solely on the issue of compensatory damages.

The facts concerning the occurrence were very much in dispute. Shannon testified that after he finished work one afternoon, he and several companions went fishing and were so engaged from about 5:30 o'clock p. m. until midnight. He drove one of his companions home in his automobile, and then proceeded on the highway toward his own home, driving about 55 to 60 miles per hour. He testified that he drove off the highway to avoid a collision with another automobile approaching from the opposite direction, and went over a ditch and collided with a tile culvert. There was no contact between the two automobiles and the other automobile did not stop.

Following the accident two men arrived at the scene. Shannon did not ask either of the men to call an ambulance, or to take him to the hospital. He did ask one of the men to help pull his car out, and also to drive him to Manchester, but the man declined. The men told Shannon that the police should be called, and one of them did arrange for the call.

State Highway Patrolman Lester arrived about one-half hour after the accident. He smelled intoxicants on the breath of Shannon, and observed slurring in Shannon's speech. He asked Shannon to walk and Shannon had difficulty in doing so. Lester then arrested Shannon for driving while intoxicated.

The validity of the arrest has not been disputed.

Lester then drove Shannon to the Warren County jail.

Shannon testified that he requested Lester to take him to the Warren County hospital, which is located only one mile from the jail, but that Lester declined to do so; that he made a similar request of Deputy Sheriff Lance, at the jail, and also that he requested permission to use the telephone, but that he was refused.

At the jail Shannon submitted to a balloon test to determine alcoholic content, and was found to have 16%, [sic] and he was then placed in the drunk tank. Shannon had testified that he had only two beers and a sandwich.

Lester and Lance each denied that they refused to take Shannon to the hospital. They testified that they offered to take him to the hospital and that he declined their invitation. Lance further testified that he offered Shannon permission to use the telephone, but that Shannon declined. He also testified that there was a sign on the wall at the jail indicating permission to use the telephone.

A city policeman later arrived at the jail, and drove Shannon to the hospital at about 5:30 o'clock in the morning.

Dr. Gaw testified by way of deposition taken by the plaintiff, which was read into evidence. He testified on direct examination that he saw plaintiff around six o'clock a. m., and that he sutured the cuts on the side of Shannon's head and on his face. The Doctor testified at great length concerning the injuries which Shannon received when his car struck the tile culvert. The injuries consisted of a fractured right ulna with displacement, a fracture of a bone in the nose with no displacement, and bruises. He said that no shots were administered to Shannon to relieve pain until about 7:30 o'clock in the evening, although Shannon received some medication for pain prior to that time.

Dr. Gaw testified that in order to set the fracture of the ulna a metal pin was inserted at the elbow. X-rays were taken some time after the operation, which showed the bones were in excellent alignment, with no dislocation. It was not necessary to do anything with re-

spect to the fracture of the bone in the nose.

There was proof that the officers had no way of knowing that plaintiff was suffering from a fractured ulna with displacement, or a fractured nose. Even Dr. Gaw did not know definitely until the x-rays were taken.

Relative to pain, Dr. Gaw testified that in his opinion Shannon suffered only the average amount of pain usually due to fractures. Shannon spent six days in the hospital before he was discharged.

Practically the entire direct examination of Dr. Gaw by the plaintiff was devoted to a description of the nature of the personal injuries sustained by Shannon when his automobile ran into the tile culvert, and Shannon's treatment at the hospital.

No questions were addressed to the doctor by plaintiff's counsel as to whether any of the injuries were permanent, whether he would suffer pain, or incur medical expense in the future, or whether the five and one-half hours' delay while Shannon was in jail in any way aggravated his injuries. During the delay in jail Shannon did suffer pain, but he also suffered pain during the delay in the hospital.

On cross-examination of Dr. Gaw, defense counsel did bring up the subject of aggravation, asking the following question:

Based upon your medical opinion, did the delay of some hours in this boy's treatment cause him any added injury other than probably some possible swelling and soreness?

A What he had, of course, was fractures and lacerations, contusion of his chest, abrasions. Other than the pain that he had and swelling—of course, there was some more swelling of his arm—I don't think of anything here that would have really given him a lot of—make the situation a lot worse. (A. 146)

■ In our opinion a person detained in custody is entitled to medical treat-ment when necessary on account of illness or injury, and refusal of prison authorities, with knowledge of the condition, to provide medical treatment may constitute a violation of the due process clause of the Fourteenth Amendment. *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972).

■ Resolution of the issue of liability involved disputed facts and was for the jury to decide. The District Court did not err in denying the motion for a directed verdict. As before stated, it was not disputed that the arrest was lawful. Shannon was bound over to the Grand Jury by the General Sessions Court but the Grand Jury returned a no bill.

It is clear that plaintiff cannot recover against the defendants for any of the injuries which he sustained as a proximate result of his propelling his automobile into the tile culvert. He was arrested around midnight for driving while intoxicated, and was taken to the county jail where he remained for only five and one-half hours. He could not very well be taken before a Magistrate until the following morning.

■ Plaintiff, therefore, cannot recover damages for his arrest. He can recover damages only for any aggravation of his pre-existing injuries, or for pain and suffering proximately caused by any unreasonable delay in taking him to the hospital.

On this subject plaintiff testified that he repeatedly requested the officers to take him to the hospital, but this was denied by the officers. The two men who arrived at the scene of the accident and who were disinterested witnesses testified that they did not hear Shannon make any such request of State Highway Patrolman Lester. They both smelled intoxicants on Shannon's breath and observed his difficulty in walking. Wayne Ray testified that Shannon staggered. Ray further testified that Shannon asked him to drive him (Shannon) to Manchester, but that he declined because he did not want to get into trouble with the police. He observed dried blood on Shannon's face.

There was proof of delay at the hospital, until around 7:30 in the evening, before shots were administered to Shannon to relieve pain. This delay was much longer than the delay at the jail.

Defendants urge that the verdict is excessive, and that the Court erred in its instructions to the jury on the issue of compensatory damages. We will consider these issues together, because if the Court erred in its instructions on the issue of damages, it may have influenced the amount of the verdict, which we believe is grossly excessive.

The Court instructed the jury as to compensatory damages as follows:

If you find that one or more of the defendants has deprived Mr. Shannon of his right to due process of law, Mr. Shannon is entitled to be compensated therefor in damages; that is, the amount you find he was damaged by being deprived of such right.

In deciding that amount, you may consider also the reasonable and necessary expenses to Mr. Shannon for any medical, surgical, hospital, and other services and care required in his future treatment as a proximate cause of the conduct of the defendants.

And consider also the sum as will compensate Mr. Shannon for any pain, suffering and mental anguish already suffered by him and proximately resulting from the conduct of the defendants. And, for any such pain, suffering, and mental anguish as he is reasonably certain to suffer in the future from the same cause.

These compensatory damages are established by proof, if you find there is such, that Mr. Shannon has been deprived of his right to due process of law.

Damages must be reasonable. If you should reach the issues of damages, you may award Mr. Shannon only such damages as will fairly and reasonably compensate him for the damages which you find, from a preponderance of all the evidence he sustained as a proximate result of the conduct of the defendants.

You are not permitted to award speculative damages. This means you are not to include in any verdict compensation for prospective loss, which, although possible, is wholly remote or conjectural. (A. 38–39)

The Court further instructed the jury on punitive damages.

■ The instructions of the Court were apparently not very clear to the jury. With all of the evidence as to the injuries sustained in the accident, it should have been made crystal clear to the jury that the plaintiff could recover only for aggravation on account of the five and one-half hours' delay in taking him to the hospital, or for pain and suffering during that period. ·

The jury requested further instructions on damages:

The Court: The Court has received a writing from the Jury reading as follows: "Definition—Compensatory Damages; Punitive Damages—Definition."

I assume from that, Mr. Foreman of the Jury, you would like the Court to instruct you again on what constitutes compensatory damages and what constitutes punitive damages?

The Foreman: Yes, sir.

The Court: The Court in answer thereto, instructs you again as follows:

If you find that one or more of the defendants has deprived Mr. Shannon of his right to due process of law, Mr. Shannon is entitled to be compensated therefor in damages; that is, the amount you find he was damaged by being deprived of such right.

In describing that amount, you may consider also the reasonable and necessary expenses to Mr. Shannon for any medical, surgical, hospital, and other services and care required in his future treatment as a proximate cause of the conduct of the defendants.

And consider also the sum as will compensate Mr. Shannon for any pain,

suffering and mental anguish already suffered by him and proximately resulting from the conduct of the defendants. And, for any such pain, suffering, and mental anguish as he is reasonably certain to suffer in the future from the same cause. (A. 47–48)

Objections to the instructions on compensatory damages were taken by defendants.

It will be noted that at no time did the Court instruct the jury that plaintiff could recover only for aggravation of his pre-existing injuries caused by the five and one-half hours' delay in taking him to the hospital, if such delay was unreasonable, and for the additional pain and suffering which might have been alleviated if he were taken to the hospital sooner.

The Court instructed the jury that plaintiff could recover for reasonable and necessary expenses incurred by Shannon for any "medical, surgical, hospital, and other services and care required in his future treatment as a proximate cause of the conduct of the defendants."

■ This instruction was prejudicial error because there was no evidence that Shannon's injuries were permanent or that there was any likelihood that he would incur any such expense in the future.

The Court did not instruct the jury that plaintiff was entitled to recover for any medical or hospital expense incurred in the Warren County hospital, for the obvious reason that he was not entitled to such recovery.

When objection was made to the Court's charge, the Court relied on its decision in the reported case of *Smartt v. Lusk,* 373 F.Supp. 102 (E.D.Tenn. 1973), *aff'd without opinion,* 492 F.2d 1244 (6th Cir. 1974). In that case, like the case at bar, the arrest was lawful; but the police officer was found to have used excessive force in making the arrest. That factor is absent here. In *Smartt* the plaintiff sustained personal injuries by reason of the use of excessive force, which injuries consisted of fractures of two, and possibly four, ribs, and bruises.

The Court held in *Smartt* that plaintiff was entitled to recover only nominal damages for violation of his due progess rights, and $1622.20 for compensatory damages for his personal injuries. The Court denied recovery of punitive damages.

Thus, in *Smartt* there was proof of personal injury and also medical expenses caused by defendant, which is absent here. In *Smartt* the Court allowed $1622.20 for two, and possibly four, fractured ribs, and has approved $10,000 in the present case for no personal injuries.

■ In the present case we are of the opinion that the Court committed error in submitting to the jury the issue of punitive damages, as there was no proof of malice on the part of the officers.

In the present case the jury denied recovery for punitive damages.

At the trial a question was raised as to the liability of the Sheriff for the conduct of his Deputy. The District Court held that under Tennessee law the Sheriff was liable on the ground of respondeat superior. We do not decide whether the Sheriff was liable for a Civil Rights violation of his Deputy committed without the knowledge of the Sheriff, because that issue was not raised in this Court.

■ We did consider whether we should order a remittitur because of the erroneous instruction as to damages. We concluded that remittitur was inadvisable because we could not determine, with any degree of certainty, what part of the excessive verdict resulted from the erroneous instruction as to damages. *Cf., New York, C. & St.L. R. v. Niebel,* 214 F. 952 (6th Cir. 1914).

The issue of liability and punitive damages has been determined by the jury, and we will not disturb that determination.

The judgment of the District Court is reversed and the cause is remanded for a new trial solely on the issue of compensatory damages.