**J. W. GAMBLE, Plaintiff-Appellant,**

v.

**W. J. ESTELLE, Director, Texas Department of Corrections, Defendant-Appellee.**

No. 74–3727.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1975.

Rehearing and Rehearing En Banc Denied Oct. 2, 1975.

**938**

Daniel K. Hedges, Houston, Tex. (Court appointed), for plaintiff-appellant.

John L. Hill, Atty. Gen., Bert W. Pluymen, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before CLARK, Associate Justice,* and GOLDBERG and AINSWORTH, Circuit Judges.

PER CURIAM:

Appellant J. W. Gamble is presently incarcerated in the Walls Unit of the Texas Department of Corrections. On May 30, 1974, he requested leave to file this civil rights action against three officials of the Texas Department of Corrections, appellees, under 42 U.S.C. § 1983, 28 U.S.C.A. §§ 2201 and 2202, alleging in a 24-page handwritten complaint "failure to provide medical care needed", in that "the only thing that [appellees] had did for his back injury [suffered while imprisoned] was to give [him] pain pills."

Gamble, it appears, was injured on November 9, 1973, when a 600-pound bale of cotton fell upon him during a prison work assignment at the prison textile mill in Huntsville, Texas. A United States Magistrate, without requesting a reply from the State officials, recommended, and the United States District Judge ordered, the following: (1) that permission to file the case be granted; (2) that the petition be filed; (3) that the request for appointment of counsel be denied; and (4) that the cause of action for injunction and damages be dismissed for failure to state a claim under the Act. After a motion to vacate this order and a request to prosecute this appeal was denied, this court granted Gamble's application for leave to appeal *in forma pauperis* and for the appointment of counsel.

The state officials contend that Gamble was not refused medical treatment, that the doctors applied the proper diagnostic techniques, and that the complaint did not allege any exceptional circumstances warranting judicial inquiry. We find the complaint sufficient in alleging that the action of the authorities was tantamount to a refusal of medical treatment and remand the case for further action in the light of this opinion.

I.

At the outset, we note that the State admits that Gamble, a prison inmate, was working in the textile mill by assignment of the appropriate official when he was injured. Gamble alleges that his injury was "due to insufficient manpower" at the installation and was aggravated by "failure to provide medical care needed . . ." It appears that appellant was unloading a truck when the injury occurred and that he continued to work for some four hours thereafter operating the "picker machine". Later he became stiff and requested a pass to the unit hospital, which was granted. At the hospital he was given a checkup for hernia by a medical assistant and was sent back to his cell. Two hours later, his pain had become so intense that he returned to the hospital and was initially seen by a nurse who gave him two pain pills, and later by a doctor who examined him but gave him no treatment. On November 10th, he was examined by a doctor who diagnosed the injury as lower back strain and prescribed Zactrin and Robaxin for the pain. The doctor placed him on a cell-pass cell-feed routine, in which the inmate remains in his cell at all times, save to make his toilet, and Gamble was moved from his original cell to Building No. 5. On November 12th and 19th, Gamble—at his request—again saw the same doctor, complaining of continued pain, but in each instance the only prescription given was pain pills and the cell-pass cell-feed routine. On November 26th, Gamble again returned to the hospital with the same symptoms, and the same doctor gave the same prescrip-

* Of the Supreme Court of the United States (Retired) sitting by designation.

tion, except that in addition he directed that Gamble's bunk be changed from the top to the lower tier for one week. This direction, it appears, was never effected.

On December 3rd, Gamble was seen by the same doctor who took him off the cell-pass cell-feed routine and concluded that he was able to engage in light work, despite Gamble's statement that his back was still hurting just as bad as the first day it was injured. More pain pills were prescribed. Later during the same day, Gamble advised the prison administrative office that he was still hurting from his back injury and could not perform work. He was then placed in "administrative segregation" (i.e., solitary confinement) in Building No. 5, and on December 5 was taken before a prison disciplinary committee. He advised the committee, as he stated in his *pro se* petition, that he "was still hurting from lower back strain and that the only thing the doctor had did for his back injury was to give plaintiff pain pills." He further advised them that, although he had been under the doctor's care for some 26 days, the doctor had never noticed that he was suffering from high blood pressure; whereupon the Committee directed that he be examined by another doctor.

Gamble remained in "administrative segregation" throughout the months of December and January. On December 6th, he was examined by another doctor, who found his blood pressure to be 168 over 112, and he was given high blood pressure pills and pain pills for seven days. On December 13th, appellant again saw the second physician who renewed the same prescriptions for a 30-day period. On December 17th, appellant complained again of back pain and was given a prescription by a medical assistant. The same prescription was renewed for another week on December 27th.

On January 3, 1974, a prison officer asked Gamble if he wanted to go to work, to which appellant replied that "he was not going to go to work hurting". The officer stated that he would send appellant to the prison work farm. On January 5th, another officer threatened him with a transfer to the farm again. On January 7th, about 8:00 a.m., Gamble asked to be allowed to go on sick call for his back pain and migraine headaches, but it was not until 3 p.m. that his request was granted, and he was not allowed to see a doctor. A medical assistant gave him a week's supply of mild pain killers and a 30-day supply of high blood pressure pills. The issuance of pain pills was repeated on January 17th and January 25th.

On January 31st, Gamble was again brought before the disciplinary committee on the January 5th charge of refusing to work. The medical assistant told the committee that appellant's health was "first class", despite appellant's statement to the committee that his "lower back was still hurting" and that he suffered from high blood pressure. No physical examination whatever was given appellant for this hearing. The committee found him guilty and placed him in solitary confinement. Five days later—while still in solitary—at about 8 a.m. Gamble asked a guard if he could see a doctor because he was experiencing "chest pain" and, in appellant's words, "blank-outs". According to appellant, the sergeant on duty reported that, for inmates in solitary, such a request would have to be approved by the warden's office. Finally, about 7:30 p.m., a medical assistant checked Gamble and put him in the hospital for "chest pain and high blood pressure." The next day he was examined by a doctor, and Gamble's electrocardiogram was interpreted as follows: multiple unifocal P.V.C., S(re-entry often), inverted T wave, A.V.R.–lead 3 (normal), elevated P wave. On the following day, February 8, 1974, he was placed on quinidine, a heart relaxant, for three days. He was discharged from the hospital, although he still had chest pain which extended into his left arm, and returned to solitary.

On February 8, 1974, appellant asked a guard if he could go on sick call, complaining of lower back pain, chest pain, and blackouts when he stood up. The

guard went to check and, on his return, told appellant the prison officials did not want him to go on sick call. The next day appellant again complained of chest pain and saw the doctor who had previously given him the EKG at the unit hospital and who continued the quinidine prescription for another three days. On February 11, 1974, appellant signed the complaint, the dismissal of which is the basis of this appeal.

## II.

Federal courts have traditionally been reluctant to interfere with the administration of prison systems, especially those of the States; nevertheless, we note that there has been a steady increase of cases in the federal courts involving attacks on the medical, as well as the disciplinary, procedures followed in prisons. While the bench has time and again suggested that administrative procedures be established to handle complaints such as the one Gamble presents here, the response from the States has been minimal. As a result, we are obliged to hear and decide such cases under somewhat broad constitutional principles.

In considering *pro se* applications under Section 1983, we invariably find that prisoners—who are illiterate and unable to express themselves in the clear and unequivocal language required in legal pleadings—have been required to write out the complaints themselves, largely in long hand and with no knowledge whatever of the legal procedures involved. Consequently, we read such complaints with liberality and to the facts alleged, take the facts as true in cases such as the one here, and examine the record with special care and scrutiny. Though we are pleased to see from the State's brief before this court that it agrees with these standards, we again express

regret that it has not yet established the sort of administrative procedures in its criminal justice system which would have obviated the filing of cases such as this one.

On the merits, the State says that the complaint here alleges neither a deprivation of medical care nor inadequate medical treatment under such exceptional circumstances as to permit federal intervention. *See Stiltner* v. *Rhay*, 371 F.2d 420 (9th Cir. 1967); *Freeman* v. *Lockhart*, 503 F.2d 1016 (8th Cir. 1974); *Corby* v. *Conboy*, 457 F.2d 251 (2d Cir. 1972); *Thomas* v. *Pate*, 493 F.2d 151 (7th Cir. 1974); and *Fitske* v. *Shappell*, 468 F.2d 1072 (6th Cir. 1972). The Magistrate based his recommendation to dismiss on the proposition that the complaint must allege an "abuse of discretion by state prison authorities in providing medical treatment for prisoners." *Lawrence* v. *Wainwright*, 440 F.2d 379, 380 (5th Cir. 1971). We do not find any of these cases controlling here, for we think that appellant's complaint should be read to state a cause of action.

District courts must be sensitive to the problems of the *pro se* plaintiff in civil rights actions and not be too quick to dismiss for failure to state a technical cause of action. *See, e. g., Haines* v. *Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Wilbron* v. *Hutto*, 509 F.2d 621, 622 (8th Cir. 1975). While this complaint is not framed in terms of the cases cited by appellees, in part because Gamble is "unschooled" in the law, *see Granville* v. *Hunt*, 411 F.2d 9, 10 (5th Cir. 1969), such a situation calls for even greater liberality on the part of the district court, in our view, where the State has not been required to file any pleading whatever. Moreover where the general medical services afforded by the State in its prisons are publicly known to be "woefully inadequate" [1], the court must exercise

---

1. *See* Report of the Citizens Advisory Committee to the Joint Committee on Prison Reform of the Texas Legislature, filed on November 25, 1974, in Appellant's Brief, App.A, at A2–

A26. The Committee found: "Even a cursory review of the Texas Department of Correction's medical program discloses extremely serious inadequacies. There is a serious short-

the highest degree of care to make certain that a prisoner is not deprived of his federally secured constitutional right to medical care.

■ As we read the pleading here, the State not only failed to diagnose Gamble's lower back injury which he suffered while in the performance of work required by it, but the State has totally failed to provide adequate treatment of that condition. Again and again, as the complaint makes clear, the only medication prescribed was to relieve the pain, not to cure the injury; indeed, the exact nature of the back injury remains unknown. Certainly the pain pills had no curative effect, even though they were administered for some 3 months. Moreover, Gamble still has his high blood pressure, "blank outs", and heart disease. And what makes this all the more disconcerting is the fact that he has spent months in solitary confinement without medical care and stands a good chance of remaining that way without intervention.

We can only conclude that Gamble has stated an actionable claim under Section 1983 for inadequate medical care. *See Williams* v. *Vincent,* 508 F.2d 541 (2d Cir. 1974); *Tolbert* v. *Eyeman,* 434 F.2d 625 (9th Cir. 1970). Certainly an x-ray of his lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing. *Robinson* v. *Jordan,* 494 F.2d 793 (5th Cir. 1974); *Hutchens* v. *Alabama,* 466 F.2d 507 (5th Cir. 1972); *Bilton* v. *Beto,* 470 F.2d 988 (5th Cir. 1972).

The judgment is, therefore, reversed and the cause is remanded with instructions to re-instate the complaint, appoint

counsel and permit appropriate amendment thereto to the end that Gamble's, constitutional rights are fully protected and that he receives all legal relief to which he may show himself entitled.

Reversed and remanded.

---

age of trained and competent medical personnel—doctors, nurses, and technicians. At various times during our study of TDC, there were from one to three full-time doctors on the staff; their services are supplemented by use of a number of part-time physicians from the Huntsville area and localities near other units. But this is still not enough. [The TDC Medical

Director] has administrative and supervisory responsibility for all medical care for the entire system of 17,000 inmates * * *. [T]he two other full-time doctors have resigned, leaving the already overworked [Director] to bear sole full-time responsibility for 17,000 inmates. * * *. [T]he demands are many times in excess of one man's capabilities." *Id.* at A5–A6.