James Edward WALNORCH, Plaintiff,

v.

Mr. McMONAGLE et al., Defendants.

James Edward WALNORCH, Plaintiff,

v.

Joseph F. MAZURKIEWICZ et al., Defendants.

Civ. A. Nos. 75–79 and 74–2489.

United States District Court, E. D. Pennsylvania.

March 31, 1976.

Janet Parrish, Thomas D. Panebianco, Indigent Prisoner Litigation Program, University of Pennsylvania Law School, Dean C. Graybill, Philadelphia, Pa., for plaintiff.

Michael Minkin, Deputy Atty. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for defendants.

## OPINION

DITTER, District Judge.

The question presented on defendants' motion for summary judgment in this case is whether their alleged failure to provide proper medical treatment for plaintiff rises to the level of cruel and unusual punishment so as to be cognizable under the Civil Rights Act.

Plaintiff, a state prisoner, filed this Section 1983 action[1] against employees of the State Correctional Institution at Graterford, Pennsylvania, for violation of his constitutional rights against cruel and unusual punishment, and to due process and equal protection of the laws.[2] He seeks declaratory relief and damages of $100,000. from each defendant. The complaint and affidavits submitted by plaintiff thereafter allege, *inter alia*, that in August, 1973, while incarcerated at Graterford, plaintiff suffered a severe injury to his *left* knee while playing football[3] and that he was allowed to remain for three days without treatment despite constant complaints to a correctional officer, Sergeant Eugene Wilfong. The complaint further asserts that both Mr. Donald McMonagle, the prison hospital administrative officer, and Dr. Calvin English, a prison doctor, were aware of plaintiff's condition but took no action to relieve the pain and weakness in his knee; both refused plaintiff's requests to be taken to Pottstown Hospital for x-rays; an arthrogram

1. 42 U.S.C. § 1983 and its jurisdictional implementation, 28 U.S.C. § 1343. Plaintiff also seeks relief under 42 U.S.C. § 1985; however he has failed to allege any concerted activity between the defendants. In the absence of such allegations and because of the way I dispose of plaintiff's Section 1983 claim, I find it unnecessary to consider his Section 1985 claim.

2. Plaintiff has offered no independent theory of recovery based on either the equal protection or the due process clauses of the fourteenth amendment. The sole relevance of the fourteenth amendment to plaintiff's claim appears

to be as a basis through which his eighth amendment claim is made applicable to the states. See *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

3. In *Walnorch v. Mazurkiewicz*, C.A. 74–2489 (E.D.Pa.) this plaintiff brought a civil rights action against various officials at the Rockview State Correctional Institution for improper medical treatment following a severe injury to his *right* knee while playing baseball. Plaintiff has not opposed the defendants' summary judgment motion in 74–2489, and accordingly the motion is granted.

was performed on August 30, 1974;[4] on September 28, 1974, Dr. Menkowitz, an orthopedic surgeon, recommended surgery; and as of the date of filing the complaint, February 3, 1975, plaintiff had not received corrective surgery and is still suffering from the injury. Plaintiff's affidavit of June 13, 1975, further refines the complaint. It states that he was scheduled for surgery on October 26, 1974, but was unable to undergo it because he was confined in the prison's Behavior Adjustment Unit; that he saw Dr. Menkowitz again in November, 1974, at which time he was promised knee braces and physical therapy; that he has not received any treatment or surgery; and that he continues to suffer pain and difficulty of movement in his knee.

After a careful examination of the entire record in this matter, I conclude that for purposes of the motion for summary judgment the events which occurred prior to August 27, 1973,—the date plaintiff was first seen by prison medical personnel—must be separated from those which occurred after that date.

I. Post-August 27, 1973 Occurrences.

In connection with their motion for summary judgment, the defendants have produced plaintiff's complete medical record at Graterford. Plaintiff alleged that his injury occurred in late August, 1973, and his complaint admits that he was treated within three days, receiving an Ace bandage and some pain pills. The medical records show that between August 27, 1973, and December 20, 1974, shortly before his transfer to Dallas,[5] plaintiff was seen by various doctors relative to his knee injury on at least eleven occasions.[6] In chronological order, these records reflect the following:

August 27, 1973 — plaintiff sent to the hospital relative to his leg.

September 13, 1973 — plaintiff referred to orthopedic clinic.

November 3, 1973 — plaintiff seen by Dr. English; plaintiff's injury diagnosed as positive torn maniscus; determination made that plaintiff's knee should be x-rayed.

November 9, 1973 — plaintiff seen by Dr. Winter; plaintiff's x-rays read; diagnosis of ununited epiphysis of the tibia tubercle which probably represents old, inactive osteochondrosis and minimal degenerative arthritis of the margins of the innerconydylar notch.

February 3, 1974 — knee pain persists; plaintiff given Ace bandage.

February 6, 1974 — plaintiff seen by Dr. Katz; recommendation of flexible appliances on trial basis to reduce posterior muscle strain; patient should be followed by orthopedic surgeon.

4. The complaint does not mention the arthrogram performed on August 30, 1974. Plaintiff first brought this matter to the court's attention in his June 13, 1975, affidavit.

5. Plaintiff was transferred from the Graterford State Correctional Institute to the Dallas State Correctional Institute on January 24, 1975.

6. Plaintiff may have been seen by doctors relative to his knee injury on more than eleven occasions. In arriving at this figure I have not counted several records which state that plaintiff was seen by a physician and/or given medication, but do not reveal the reason for the treatment or medication.

| | | |
|---|---|---|
| March 9, 1974 | — | plaintiff seen by Dr. Menkowitz; arrangements made for arthrogram. |
| June 24, 1974 | — | plaintiff seen by Dr. English; knee still symptomatic; doctor will check on status of arthrogram. |
| September 7, 1974 | — | plaintiff seen by Dr. English; arthrogram completed but no results available; arrangements to be made to have plaintiff discuss results with Dr. Menkowitz. |
| September 28, 1974 | — | plaintiff seen by Dr. Menkowitz; arthrogram results discussed with patient; surgery recommended. |
| October 26, 1974 | — | plaintiff refused surgery and failed to show up to see Dr. Menkowitz. |
| October 27, 1974 | — | plaintiff wants surgery only in Pottstown. |
| December 20, 1974 | — | knee brace previously ordered referred to McMonagle as not received. |

 It is clear that the very purpose of a motion for summary judgment is to pierce through the pleadings, 6 *Moore's Federal Practice* § 56.22[2] (1974), and that faced with this extensive record plaintiff may not rely on the conclusory allegations of his complaint. *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970); *Brown v. Cliff*, 341 F.Supp. 177, 179 (E.D.Pa.1972). Yet with one exception, neither in his affidavit nor at oral argument has plaintiff disputed the essential accuracy of these records.

 In order for a motion for summary judgment to be granted the movant must show two things: (1) that there is no genuine issue as to any material fact and (2) that he is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). See generally *Moore's*, supra, at §§ 56.09–56.23 (1974). A review of the entire record shows the only post-August 27, 1973, fact in dispute concerns October 26, 1974: defendants contend plaintiff refused surgery on that date whereas Walnorch contends that he was unable to keep his appointment for surgery due to his confinement in the Behavior Adjustment Unit at Graterford. If, despite accepting plaintiff's version of this factual dispute, defendants are entitled to judgment as a matter of law, the factual issue is not material. Such is the case here.

 In this Circuit, an allegation amounting to nothing more than negligence is insufficient to state an eighth amendment claim for improper or inadequate medical treatment. *Gittlemacker*, supra.

> More is needed than a naked averment that a tort was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and the laws of the United States. And this must be set forth with specificity; mere argumentative and conclusory allegations will not suffice.

> . . . . .

> It is only where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment that a colorable constitutional claim is presented. (footnote omitted) . .

[M]uch more is required than an allegation of tortious conduct. Many cases describe the necessary additive as "exceptional circumstances" . . . [amounting to conduct] so grossly incompetent, inadequate or excessive "as to shock the general conscience or to be intolerable to fundamental fairness."

*Id.* at 6.

■ As noted previously, plaintiff does not dispute the fact that he received the medical care reflected by the records. Rather, he contends that the care given him was grossly inadequate. Within a certain range, the question of whether medical treatment is so improper or inadequate as to amount to cruel and unusual punishment would, no doubt, be for a trier of fact and therefore be inappropriate for disposition by summary judgment. Cf. *Conner v. Jeffes*, 67 F.R.D. 86, 90 (M.D.Pa.1975); *United States ex rel. Ingram v. Montgomery County Prison Bd.*, 369 F.Supp. 873 (E.D.Pa.1974). However, when the standard of *Gittlemacker* is applied to the medical treatment afforded plaintiff after August 27, 1973, it is apparent as a matter of law that he was not subjected to cruel and unusual punishment. Even if plaintiff's explanation of why he did not appear for surgery on October 26, 1974, is accepted, the other undisputed medical records show that after August 27, 1973, plaintiff received extensive treatment for his injury. At oral argument defense counsel asserted and plaintiff did not dispute that, while plaintiff's knee will require corrective surgery, it is an elective procedure with no urgent need for immediate action. See *Douglas v. El Reno Reformatory*, 404 F.Supp. 1316 (W.D.Okl.1975). Stripped to essentials, plaintiff states nothing more than his dissatisfaction with the speed with which his non-critical knee condition is being corrected. While the court sympathizes with his desire for quicker treatment, it does not follow that he is entitled to the relief he seeks in this suit. At most his complaint constitutes a claim for negligence which is not cognizable under the Civil Rights Act.

■ The difference between the conduct alleged here and that described in other cases where valid Section 1983 claims involving prisoner medical treatment were set forth is significant. There is a common thread running through each case in the latter category: the conduct alleged was either deliberate neglect amounting to a total failure to provide essential medical care or care so grossly inadequate as to shock the conscience. See, e. g., *Freeman v. Lockhart*, 503 F.2d 1016 (8th Cir. 1974); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir. 1974); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir.) cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971); *Wood v. Maryland Casualty Co.*, 322 F.Supp. 436 (W.D.La. 1971).[7] This type of conduct was clearly not present in the case at bar after August 27, 1973.[8] Accordingly, partial summary judgment for the defendants must be granted as to all events after that date.

---

7. See also *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974); *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir. 1972); *Stiltner v. Rhay*, 371 F.2d 420 (9th Cir.) cert. denied, 386 U.S. 997, 87 S.Ct. 1318, 18 L.Ed.2d 346, 386 U.S. 1025, 87 S.Ct. 1384, 18 L.Ed.2d 466, 387 U.S. 922, 87 S.Ct. 2038, 18 L.Ed.2d 977, reh. denied, 389 U.S. 893, 88 S.Ct. 21, 19 L.Ed.2d 212 (1967). It is to be noted that all of the cases cited in the text and this footnote except *Fitzke* were decided on a motion to dismiss where only the bare allegations of the complaint could be considered. Here, on the motion for summary judgment, I have the benefit of the affidavits of the parties and the plaintiff's medical records, which show conclusively that after August 27, 1973, plaintiff was not subjected to cruel and unusual punishment.

8. The only case I have found which might arguably support plaintiff's cause of action as to post-August 27, 1973, occurrences is *Gamble v. Estelle*, 516 F.2d 937 (5th Cir.) reh. denied, 521 F.2d 815 (1975), cert. granted, 424 U.S. 907, 96 S.Ct. 1101, 47 L.Ed.2d 311, 44 U.S.L.W. 3462 (1976). In that case a state prisoner was hurt when a 600-pound bale of cotton fell on him. The court of appeals reversed the district court's dismissal of the complaint, which alleged a failure to provide medical care in that only "pain pills" were given to plaintiff for his injuries. Aside from the difference in procedural posture between the instant case and *Gamble*, see note 7 supra, the complaint in the latter case contained no allegation of bad faith on the part of the state officials, compare *Robinson v. Jordan*, 494 F.2d 793 (5th Cir. 1974),

II. Pre-August 27, 1973 Occurrences.

The motion for summary judgment stands in a different light with respect to the events which occurred between the time plaintiff received his injury and the time he was first seen by medical personnel, August 27, 1973. Without stating the exact date, plaintiff alleges he was hurt in late August, 1973, and that after the injury, Sergeant Wilfong allowed him to remain in his cell for three days without medical attention despite plaintiff's repeated requests for treatment. The complaint also asserts that both Mr. McMonagle and Dr. English were aware of the plaintiff's condition but took no action. The affidavit and medical records originally submitted by the defendants, while providing a detailed picture of what happened after August 27, 1973, contained very little about what took place prior to this date. With the hope of obtaining more information concerning the precise date of plaintiff's injury and what transpired between that date and the time he was first seen by medical personnel, I ordered the parties to submit further affidavits addressed to this period.

In response, affidavits were supplied by the plaintiff and by the defendant, Sergeant Wilfong; none came from Mr. McMonagle or Dr. English. Mr. Walnorch's affidavit states he cannot remember the exact date of the knee injury; however, he knows it was not until three days afterwards that he managed to limp to the infirmary. Since both the medical records and Sergeant Wilfong's affidavit, which are not controverted in this regard, indicate that plaintiff was first seen by medical personnel on August 27, 1973, it is apparent that plaintiff's inju-

ry occurred on August 24, 1973. Beyond this, however, the affidavits are in sharp conflict. Plaintiff states that on the day of his injury and on each day thereafter, he made repeated requests to Sergeant Wilfong to be allowed to go to the infirmary and for assistance in getting there since he could not walk, but that Wilfong refused these requests. On the other hand, Sergeant Wilfong asserts that he was not on duty on August 24, 1973; that on August 25, 1973, Wilfong observed plaintiff returning from the exercise yard with an elastic bandage around his knee, walking with a slight limp; that from August 25 to August 27, 1973, the plaintiff ate in the main dining hall with the other inmates and took no meals in his cell; and that Sergeant Wilfong never personally prevented the plaintiff from reporting his injury to medical personnel.[9] It is clear that there are factual disputes as to whether Sergeant Wilfong refused to assist the plaintiff, when Mr. McMonagle and Dr. English first learned of plaintiff's condition, and the extent of plaintiff's injury and suffering.

Since there are disputes as to pre-August 27, 1973, facts, the question, again, is whether even accepting plaintiff's version of the facts, defendants are nonetheless entitled to judgment as a matter of law. If they are, then the disputes are not material and summary judgment is appropriate. Giving the complaint a fair reading and accepting all of the factual allegations of the complaint and plaintiff's affidavits as true, Sergeant Wilfong deliberately and totally refused or neglected to grant plaintiff access to any medical treatment. Mr. McMonagle and Dr. English, being aware of plaintiff's condition, also deliberately refus-

and from the facts recited in the court's opinion, it appears that the conduct alleged amounted to mere negligence, which under the law of this Circuit, is insufficient to sustain a Section 1983 claim. *Gittlemacker*, supra.

9. Sergeant Wilfong's affidavit also states that there was no "sick call" on Saturday, August 25, 1973, and Sunday, August 26, 1973. Without the full development of the record as to prison medical facilities and procedures that a trial will provide, it is difficult for me to under-

stand the significance of this assertion. Surely, there must have been some procedures for providing medical treatment, at least in emergency situations, to inmates who required it at times when there was no "sick call." Indeed, it would seem to me that one of the major issues at trial in this case may be the question of whether the plaintiff's condition, as manifested to the defendants, was of such a nature that denying him access to treatment for three days constituted cruel and unusual punishment. See the text infra.

ed or neglected to take *any* action to afford plaintiff medical attention. I conclude that depending on the seriousness and painfulness of the injury—facts which will have to be developed at trial—the conduct alleged here may very well amount to cruel and unusual punishment within the meaning of *Gittlemacker* and the other cases referred to in part I of this opinion.

That plaintiff's condition after August 27, 1973, was not and is not now critical does not change this result because essential medical care may have been required prior to that date. This might be so for at least two reasons. First, although plaintiff's condition may not now be *critical*, there is nothing to indicate that it is not *serious*, or that his condition after August 27, 1973, would have been the same even if he had been treated before then. It is thus entirely possible that if plaintiff had received prompt treatment he might not require surgery at all, or at least his condition might be less serious than it is. Second, even if the condition is not serious and would not have been mitigated by speedier treatment, plaintiff alleges that the injury caused him *severe* pain. There is nothing to indicate that medication could not have relieved the pain. If either of these circumstances were proved to exist, I believe the medical care required could be characterized as essential. A delay for three days in taking even the most rudimentary step of honoring the plaintiff's request to see a doctor would then amount to cruel and unusual punishment.

In *Shannon v. Lester*, 519 F.2d 76 (6th Cir. 1975), the court held that evidence of a delay of five and one-half hours by state officials in taking the plaintiff, who had been arrested following a motor vehicle accident in which he had sustained, *inter alia*, a fractured right ulna and a fractured nose, to a hospital sustained an award of damages under Section 1983.[10] The court

did not allow the plaintiff to recover for injuries received in the accident itself, since the state officials were in no way responsible for that; he was, however, allowed to recover for any aggravation of his injuries caused by the five and one-half hour's delay in taking him to the hospital. Similarly, in this case the plaintiff will be able to recover for any aggravation of his injuries that he is able to prove were caused by the three day delay in treatment, if, indeed, there was such a delay. The *Shannon* court also allowed the plaintiff to recover for pain and suffering during the delay. I believe that this is too generous. The plaintiff in the case at bar will be allowed to recover damages only for pain and suffering during the delay *which could have been alleviated by treatment or medication.*

For the reasons stated above, defendants' motion for summary judgment must be denied as to all events forming the basis of the complaint which occurred prior to August 27, 1973, but must be granted as to all events from that day on.

---

**10.** See also *Fitzke v. Shappell*, supra. While the injuries alleged in *Shannon* and *Fitzke* are somewhat more serious than the one suffered by plaintiff here, the delay in this case is considerably longer than in either of those cases. Compare *Rosson v. Weatherholtz*, 405 F.Supp. 48 (W.D.Va.1975).