James L. SUGGS, Plaintiff,

v.

C. W. TRANSPORT, INC., et al., Defendants.

No. 76 C 1238.

United States District Court, N. D. Illinois, E. D.

Sept. 21, 1976.

James L. Suggs, pro se.

Kevin M. Forde, William Harte, Chicago, Ill., for C. W. Transport, Inc.

William J. Scott, Atty. Gen., William S. Shapiro, Asst. Atty. Gen., Chicago, Ill., for all other defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

All defendants have moved to dismiss plaintiff's *pro se* complaint which alleges in part that the procedures used to settle his claim for workmen's compensation violated his right to due process of law. In deciding whether federal jurisdiction exists and whether plaintiff has stated a cause of action, two factors prompt us to screen his complaint especially carefully and generously. First, his complaint alleges a civil rights violation and thus must not be dismissed at the pleading stage unless it appears beyond doubt that no set of facts in support of his claim could entitle him to relief. *Gamble v. Estelle*, 516 F.2d 937 (5th Cir. 1975). Second, plaintiff has no lawyer now and had none in the challenged proceedings before the Illinois Industrial Commission (hereinafter I.I.C.). Thus, his complaint is weighed under less stringent standards than is a complaint drafted with the assistance of counsel. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). We are also struck by the human predicament of a man who seems to sincerely believe that he has a legitimate right to just compensation for his injury and that somehow, a government agency approved a wholly inadequate award for a man who cannot afford a lawyer. Nevertheless, plaintiff has failed to state a federal cause of action and his complaint must be dismissed.

According to his complaint, plaintiff was employed as a road driver for defendant, C. W. Transport Inc. On October 29, 1974, Transport dispatched a truck to him in Illinois. Plaintiff noticed that the cab was not securely fastened. He reported this defect to a dispatcher, who assured him that the truck was in satisfactory condition. On the road, however, the cab loosened from its frame. Noxious engine fumes leaked into the cab, and the plaintiff became ill. En route, plaintiff stopped twice more at garages and unsuccessfully tried to repair the truck. Finally, he arrived in Cincinnati, Ohio. By then, he was nauseated, dizzy, and beset with a headache. In Cincinnati, the dispatcher ordered the truck repaired and then returned the same truck to plaintiff with orders to drive to Milwaukee, Wisconsin. After plaintiff arrived in Milwaukee, he sought medical help and was hospitalized for toxic poisoning.

Later, Suggs sought and obtained a workmen's compensation award from the I.I.C. In a settlement contract dated April 29, 1975, the Commission approved a lump sum award of $20,000 plus all medical and travel expenses of Suggs through April 29. The settlement contract stated that the $20,000 award compensated Suggs in full

and that the sum represented payment of "permanent partial disability benefits." The contract was signed by Suggs, defendant Transport, defendant Argonaut Insurance Co., the carrier, and defendant Frank J. Wiedner, attorney for the carrier. No hearing on the claim was held.

Nearly one year after his ill-fated drive, Suggs' physician released him. At this point, a Transport employee refused to put him back on the job because he had been paid a death benefit. Suggs was placed on the disabled list at Transport and has remained there.

Although Suggs signed the settlement contract and nowhere claims his signature was coerced, or that he did not understand the contract, he soon became dissatisfied with the settlement and returned to the I.I.C. in an effort to augment his award. With the assistance of defendant Jill Schwartz, assistant to the I.I.C. chairman, Suggs' Motion to Set Aside the Settlement Contract and Lump Sum Award was set for hearing. By this time, Suggs began to realize that he needed legal counsel and asked the I.I.C. chairman, Melvin Rosenbloom, to represent him. Rosenbloom, of course, declined. Although he did not submit his Motion to Set Aside to the court, we infer from his complaint that Suggs' grounds for the motion were that 1) the settlement award was approved without a hearing; 2) the award was factually incorrect because Suggs was totally disabled and not partially disabled; and 3) defendant Frank J. Wiedner fixed the terms of the contract, knowing them to be untrue. The I.I.C. denied Suggs' motion on February 13, 1976. Suggs again tried to open his claim, but the I.I.C. turned down his request. Jill Schwartz wrote to Suggs and suggested that he appeal the I.I.C. ruling in circuit court. Instead, Suggs filed his self-styled "Appeal (Complaint)" here. He apparently wants this court to order the I.I.C. to order his employer to pay him additional compensation for his injury.

■ At the outset, we must consider whether the court has jurisdiction to consider any of Suggs' contentions. Implicit in Suggs' complaint are two theories of jurisdiction. First, he alleges that his employer, defendant Transport, dispatched a truck to him in violation of the Motor Carrier Safety Regulations, 49 C.F.R. § 393.77, ¶ 4 (1975). This regulation provides that vehicles with heaters taking in air from the engine must avoid contamination of the air from exhaustion or engine gases. Suggs also cites 49 C.F.R. § 396.4 (1975) which provides that no motor carrier shall permit a driver to drive a vehicle if its operation would be hazardous. Suggs seems to claim that these regulations give rise to federal question jurisdiction under 28 U.S.C. § 1331. Although an administrative regulation which has the force of law may give rise to federal question jurisdiction, *Farmer v. Philadelphia Elec. Co.*, 329 F.2d 3 (3d Cir. 1964); 13 *Wright, Miller,* and *Cooper, Federal Practice and Procedure,* § 3563, at 417 (1975), the claim must present a significant question respecting the construction, validity, or interpretation of the law. *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). The basis for Suggs' claim, however, is in common law negligence. The violation of the regulation, if proved, would only be evidence of breach of Transport's duty of care. And this court has no jurisdiction to decide a negligence claim against a private defendant absent diversity of citizenship.

■ Suggs also claims that a number of incidents which occurred during the processing of his claim deprived him of due process of law and the equal protection of laws. Though plaintiff makes no challenge to the constitutionality of the Illinois Workmen's Compensation Act, he does allege that the actual procedures used in his case deprived him of due process of law. The actions of the I.I.C. occurred under color of state law. Thus, this court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. That plaintiff failed to appeal his award to the Illinois Circuit Court does not strip this court of jurisdiction, because exhaustion of state remedies is not required under § 1983. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1971).

More specifically, a federal plaintiff challenging state administrative action need not exhaust state judicial remedies. *Huffman v. Pursue*, 420 U.S. 592, 629 n. 21, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

■ Still, the scope of review over I.I.C. actions is extremely limited and is no substitute for a direct appeal. Even if Suggs could prove that the I.I.C. decisions were erroneous or against the manifest weight of the evidence, he would not be entitled to relief in federal court. Direct review is limited to an action in state court, as provided in the Workmen's Compensation Act, Ill.Rev.Stat. ch. 48, § 138.19, and Suggs was repeatedly advised that this was his remedy.

■ Plaintiff's specific allegations attack all phases of his case before the I.I.C. First, he claims that the I.I.C., in approving the initial settlement order, deprived him of property without due process of law because the order described his physical condition as permanent partial disability when he was in fact totally disabled. On its face, this claim is insufficient to state a cause of action under § 1983. Assuming Suggs is correct, he merely asserts that the settlement order was factually incorrect, and he does not raise any constitutional questions. *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137–38 (2d Cir. 1964).

■ He also complains that he was entitled to a hearing on April 29, when the settlement order was signed. Suggs' right to a hearing is set out in the statute. Ill. Rev.Stat. ch. 48 § 138.19. He could, however, voluntarily agree to a lump sum settlement without a full hearing as provided in Ill.Rev.Stat., ch. 48, § 138.9. This is apparently what he did. Furthermore, he had an actual hearing on his Motion to Set Aside on January 5, 1976.

■ His next set of contentions is directed to that hearing on his motion. Suggs claims that the hearing was unfair because the arbitrator, Ted Black, Jr., was biased against him from the outset. Black allegedly said that he was not going to find fraud in the settlement order, before Suggs

rose to present his case. In other words, the arbitrator expressed an opinion on the merits before the hearing took place. The issue is whether these allegations are sufficient to state a violation of the due process clause on the basis of bias.

■ The right to an impartial judge is a basic and essential component of a full and fair hearing. *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). This right extends to administrative proceedings as well as to court trials and hearings. *Withrow, supra*; *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). The Supreme Court has identified certain areas in which circumstances point to a high likelihood of actual bias. *Withrow, supra*. For example, a judge who was personally vilified and insulted by a litigant cannot be impartial in that person's subsequent trial for contempt. *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). In addition, a judge cannot be impartial if he has a financial interest in the litigation. *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927).

■ Plaintiff's allegations do not fall within either of these categories. Instead, he asserts that the arbitrator made up his mind before the hearing began. But the notion of bias does not extend to all preferences and predilictions a judge might entertain for one side or the other. A decisionmaker need not suspend his mental processes until all the evidence is in. An empty mind is not the same as an open mind, nor is a preliminary inclination the same as a final decision. As the court in *Duplan Corp. v. Deering Milliken, Inc.*, 400 F.Supp. 497 (D.S.C.1975) noted:

> Judges cannot be prohibited from feeling aversion or sympathy for either one party (or attorney) or the other. "Mild expressions of feeling are as hard to avoid as the feeling itself;" therefore such expressions are not forbidden. 400 F.Supp. at 512.

*See also* the perceptive analysis by Judge Frank in *In Re J. P. Linahan*, 138 F.2d 650 (2d Cir. 1943).

The Fourth Circuit uses a cogent distinction for separating harmful bias from permissible views. In *Duffield v. Charleston Area Medical Center*, 503 F.2d 512 (4th Cir. 1974), the court held that a decision-maker need not disqualify himself for bias unless the prejudgment stems from an extrajudicial source and would result in a decision based on facts or factors other than what he learned from his participation in the case. *See also, United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). In *Duffield*, a physician complained that the hospital committee which revoked his hospital privileges was biased because some of its members had participated in earlier administrative actions against him. The court found that the board members' dual participation did not deprive the physician of due process of law.

This approach is useful here, and under it, Suggs' complaint of bias fails to state a claim. He alleges no facts showing that arbitrator Black's statement stemmed from a source other than his familiarity with the papers before him at the start of the hearing. Suggs does not claim that Black prevented him from presenting his views at the hearing itself.

Suggs raises other infirmities with the January hearing, but none are sufficient to state a claim for deprivation of constitutional rights. His assertion that he was denied equal protection of law because he was treated differently than an applicant with a lawyer is frivolous. Although we make no finding on the merits, the letters he tendered to the court suggest that the I.I.C. staff was especially careful to inform Suggs of his rights and options under the workmen's compensation statute.

Suggs also suggests that he was entitled to a transcript and that defendant Sabich's failure to send him one obstructed justice and deprived him of due process of law. These allegations are without merit. Although Suggs had a statutory right to a transcript as a poor person, Ill.Rev.Stat. ch. 48, § 138.20, the constitutional right to a transcript does not extend to a civil administrative hearing. Even if he had such a constitutional right, Suggs failed to take the steps necessary to obtain a transcript from the I.I.C.; there is no indication that the I.I.C. refused to provide it. Suggs' letter to this court dated July 17, 1976 indicated that the I.I.C. sent him a notice of a further proceeding relevant to his obtaining a transcript, and he refused to co-operate.

For the foregoing reasons, the motions to dismiss are granted and Suggs' complaint is dismissed. This decision makes unnecessary any ruling on Suggs' request for appointment of counsel. 28 U.S.C. § 1915(d).

Enter judgment dismissing plaintiff's action.