**Richard A. MITCHELL, Plaintiff,**

v.

**CHESTER COUNTY FARMS PRISON et al.**

Civ. A. No. 75–1754.

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1976.

---

272

Thomas P. Fay, Legal Aid of Chester County, West Chester, Pa., for plaintiff.

Norman J. Pine, Parkesburg, Pa., for defendants.

## OPINION

DITTER, District Judge.

The principal question raised by this motion to dismiss is whether the failure, either negligent or intentional, by the staff of a state prison facility to provide medication to an inmate for the control of his epileptic condition presents a claim cognizable under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and its jurisdictional counterparts, 28 U.S.C. §§ 1331 and 1343.

Accepting as true the allegations of the complaint and reasonable inferences deducible therefrom, as I must on a motion to dismiss, the facts giving rise to this suit may be summarized as follows. Plaintiff Richard A. Mitchell has suffered from epilepsy since 1971. In order to prevent epileptic seizures, Dr. Linton Theodore Mercer[1] prescribed that plaintiff take dilantin[2] and phenobarbitol four times daily.

1. From the documents filed to date it is unclear whether Dr. Mercer is plaintiff's personal physician or a doctor attached to the Pennsylvania Correctional Institution at Dallas, where Mitchell was incarcerated prior to being transferred to defendant Chester County Farms Prison.

2. Dilantin is a trade mark for preparations of diphenylhydention, chemical name 5–5 diphenyl-2, 4-imidazolidinedione, which is used as an anticonvulsant in cases of grand mal epilepsy. Dorland's Illustrated Medical Dictionary (24th ed.) 421, 424.

On June 15, 1973, Mitchell and all of his records were transferred from the State Correctional Institution at Dallas, Pennsylvania, to defendant Chester County Farms Prison, where he remained until August 2 of that year. Upon his arrival at the Chester County facility he apprised defendant Cooney, a sergeant and the medical officer of that institution, that he was an epileptic and required medicine four times a day. Sergeant Cooney stated that the dilantin and phenobarbitol would be sent to Mitchell's cell "later on." Again that same day, June 15, 1973, plaintiff told a cell guard that he was in need of medication, and the guard responded, "There's nothing I can do."

Thereafter, plaintiff made constant requests for medication, but none was supplied to him until the evening of June 18. Although he took it immediately, on June 19, 1973, plaintiff lost consciousness and fell to a cement floor, where he struck his head. Guards and inmates thereupon came to his assistance, and placed a stick in his mouth to prevent him from swallowing his tongue. Mitchell was rushed in a prison truck to Chester County Hospital. He was treated in the emergency room for an epileptic seizure, released, and returned to the prison. Thereafter, throughout the duration of his incarceration in that institution, until August 2, 1973, prison authorities provided his medication.

Plaintiff avers that as a direct result of defendants' negligent or intentional failure to furnish him with medication from June 15 to June 18, he suffered severe mental, emotional, and physical anguish culminating in the violent epileptic seizure which required emergency medical treatment. He seeks compensatory and punitive damages, each in excess of $10,000., and costs.

Defendants' motion to dismiss takes three basic tacks: First, they contend that plaintiff has failed to state a claim upon which relief can be granted and that his allegations consist of bare conclusory statements not involving the denial of any Constitutional rights. Secondly, they argue that liability under Section 1983 cannot be imposed upon the defendant prison, because it is not a "person," or upon any named defendants since, in their view, plaintiff has failed to allege any personal involvement on their behalf and the doctrine of *respondeat superior* is inapplicable under that section. Finally, defendants posit that plaintiff has alleged no pattern of behavior which would justify an award of punitive damages.

Since 1970, this Circuit has recognized that "where an inmate's complaint of improper or inadequate medical treatment depicts conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment . . . a colorable constitutional claim is presented [footnote omitted]." *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970).

The Supreme Court very recently has confirmed the vitality of cases such as *Gittlemacker* and elaborated on the standard to be applied:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, supra, [428 U.S. 153] at 173, 96 S.Ct. [2909], at 2925 [49 L.Ed.2d 859], proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.

. . .

In order to state a cognizable claim, a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. (footnotes omitted) *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976).

■ Defendants argue that absent an allegation that their conduct was repetitious or arbitrary and capricious, the actions complained of are insufficient to "shock the conscience." I disagree. In the first place, the allegations of the complaint plainly portray a course of conduct by means of which one or more defendants deprived plaintiff of sorely needed medication in a fashion that may well be characterized as arbitrary and capricious. Cf. *Freeman v. Lockhart*, 503 F.2d 1016 (8th Cir. 1974); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir. 1974). Secondly, my recent decision in *Walnorch v. McMonagle*, 412 F.Supp. 270 (E.D.Pa.1976), completely disposes of the argument that to give rise to a civil rights claim the behavior of the defendants need be more "repetitious" than that alleged here.[3] In that case I held that an allegation of deliberate failure by prison guards to allow plaintiff access to medical treatment for a period of three days raised a cognizable claim under the Civil Rights Act. Id. at 276–77. In relevant respects, the present case is very nearly on all fours with *Walnorch* and the result I reach is likewise the same.[4] See also *Thompson v. Montemuro*, 383 F.Supp. 1200 (E.D.Pa.1974). Under the teachings of *Estelle* and the other cited cases the course of conduct alleged, would, if proven, plainly support the imposition of liability on those responsible.

■ On behalf of the defendants it is also contended that plaintiff's allegations are insufficiently precise to state a claim under Sections 1983 and 1985. See *Kauffman v. Moss*, 420 F.2d 1270, 1275 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970). However, even a cursory reading of the complaint here demonstrates that its allegations, both with respect to Constitutional violations and conspiracy, easily satisfy specificity requirements.

■ Defendants assert that Chester County Farms Prison is not a "person" subject to suit under the federal civil rights law. I agree. See *United States ex rel. Gittlemacker v. County of Philadelphia*, 413 F.2d 84 (3d Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970).[5] Moreover, inasmuch as the complaint alleges no direct, personal participation on the part of either Warden Thomas G. Frame or Dr. Philip E. Kistler in the purported misconduct, and the doctrine of *respondeat superior* has no application in civil rights actions, *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), cert. denied sub nom., *Employee-Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974), this suit also must be dismissed with respect to those defendants. Plaintiff's allegations against the remaining defendants are sufficient to withstand the instant motion.

■ Finally, defendants assert that by virtue of plaintiff's failure to allege that the conduct complained of is or has been part of a constant pattern or practice of behavior, his prayer for punitive damages

---

3. The refusal to provide plaintiff with medication over a period of four days, in the face of his daily, repeated requests for it, may certainly be characterized as "repetitious." Defendants appear to argue, however, that liability could arise only had prison officials continued to refuse to provide Mitchell with dilantin and phenobarbitol upon his return from the hospital after having suffered an epileptic seizure. They cite no authority for this remarkable proposition, and my research has disclosed none.

4. Unlike *Walnorch*, where there might have been some question as to the seriousness of the knee condition, 412 F.Supp. at 277, there can be no question here that plaintiff's epileptic condition is serious.

5. The complaint also bases jurisdiction on 28 U.S.C. § 1331, but no cause of action exists against the prison under the fourteenth amendment. See *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa.1976).

must be stricken. This position assumes far too narrow a view of the circumstances in which punitive damages are available in Section 1983. Such relief may be awarded where the defendants have acted wilfully and in gross disregard for the rights of the complaining party, *Lee v. Southern Home Sites Corp.*, 429 F.2d 290 (5th Cir. 1970); *Roberts v. Pierce*, 398 F.2d 954 (5th Cir. 1968), or where they have behaved in bad faith or for an improper motive, *Caperci v. Huntoon*, 397 F.2d 799 (1st Cir.), cert. denied, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968).

The allowance of punitive damages involves an evaluation of the nature of the defendant's conduct and the wisdom of some form of pecuniary punishment. The showing of a personal animosity to the plaintiff presents a strong case for the awarding of punitive damages, but it is not a prerequisite to the granting of such damages. An instruction on punitive damages is appropriate when the facts are such that the jury could find the action and conduct of the defendants to be willful and malicious apart from any showing of personal animosity between the parties. *C. J. Antieau, Federal Civil Rights Acts*, § 76 at 87 (1975 supp.) [footnote omitted].

At this juncture, I am unable to conclude that the allegations of the complaint, if proven, would not justify an award of punitive or exemplary damages.

For the foregoing reasons, then, defendants' motion to dismiss will be granted with respect to Chester County Farms Prison, Warden Frame, and Dr. Kistler only. In regard to all other defendants, the motion will be denied.