**George PARRISH and Charles Giles, Plaintiffs-Appellants,**

**v.**

**Perry JOHNSON, Charles Anderson, K.L. Cole, and Clarence Turner, Defendants-Appellees.**

**No. 84–1642.**

United States Court of Appeals, Sixth Circuit.

Argued June 2, 1986.

Decided Sept. 5, 1986.

---

Larry Bennett (argued), Detroit, Mich., Jody LeWitter, for plaintiffs-appellants.

Frank J. Kelley, Atty. Gen. of Mich. Lansing, Mich., Thomas A. Kulick (argued), for defendants-appellees.

1. These holdings have not been challenged on appeal.

2. In considering Turner's conduct toward Giles, the district court judge detailed Giles' testimony

Before KEITH and BOGGS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiffs-appellants George Parrish and Charles Giles appeal from a district court's decision finding that Parrish's and Giles' conditions of confinement were unconstitutional and that defendant-appellee Clarence Turner subjected Parrish to cruel and unusual punishment and violated Parrish's First Amendment rights.[1] On appeal, Parrish contends that the district court erred in awarding only nominal damages for the punishment he endured and Giles argues that Turner violated his First, Eighth, and Fourteenth Amendment rights. We reverse.

Since the facts of this case are critical to the resolution of the issues raised before this Court, we set out the district court's factual findings in detail.[2] Both Parrish and Giles were paraplegics incarcerated at the State Prison for Southern Michigan. As a result of their condition, both men exhibited a diminished control over their bladder and bowel functions and, consequently, would frequently soil themselves. While Giles was able to clean himself, Parrish, who suffered from a fused hip joint, needed assistance to change. Assistance, however, due to both staff shortages and intentional neglect on the part of prison personnel, was often slow in arriving forcing Parrish, on a regular basis, to sit in his own feces for several hours. Besides being extremely unpleasant, this situation was medically dangerous because Parrish risked infecting his decubitis ulcers. Although Giles could clean himself, mismanagement and neglect rendered this ability nugatory; Giles was either not supplied with anything with which to clean himself or was given one small rag which quickly became soiled and unusable. Thus, like Parrish, Giles would routinely sit in his

and assumed that it was true for purposes of his decision. In resolving the issues presented on appeal, we likewise take Giles' testimony as true.

own waste for significant periods of time. These deplorable hygenic conditions were exacerbated by verbal degradations, sporadic assaults, and acts of malfeasance and nonfeasance committed by Turner, a prison guard, against Parrish and Giles.

Turner aggravated the unsanitary conditions of Parrish's confinement by habitually refusing to relay or procrastinating in transmitting Parrish's requests for aid to the nurses. Turner also committed several assaults upon Parrish. On one occasion, Turner brandished a knife in order to extort cigarettes from Parrish and, on another, in what at best could be described as a bizarre episode, Turner while standing on top of a table shouting obscenities waved a knife at Parrish. Turner further enhanced Parrish's suffering by placing Parrish's food tray in positions in which Parrish was unable to retreive it and by serving the food accompanied with taunts that he had contaminated the food with venereal disease (a disease which Turner, in fact, had). Finally, Turner also interfered with Parrish's private phone conversations and personal mail: he would interrupt Parrish's phone calls by loudly speaking obscenities into the receiver and capriciously refuse to distribute and open and read Parrish's legal and personal mail. Giles received similar treatment.

Turner was equally remiss in relaying Giles' requests for care and twice accosted Giles with a knife. The first assault occurred on an elevator when Turner, for no apparent reason, pulled a knife and waved it in front of Giles' face. Turner repeated this action approximately one month later in order to extort potato chips and cookies from Giles. "Quite frequently" Turner ridiculed and tormented Giles by calling him, among other things, a "crippled bastard" who should be dead and telling Giles that he had defiled his food with venereal disease. Finally, Turner randomly opened and read Giles' personal mail.

Based upon the foregoing factual findings, the district court concluded that Parrish's and Giles' conditions of confinement were unconstitutional and that Turner's conduct had violated Parrish's First, Eighth, and Fourteenth Amendment rights. However, the district court judge refused to find that Turner had violated Giles' constitutional rights because Giles had not been subjected to the full panoply of Turner's misbehavior and had failed to demonstrate a special animus. Turning to the appropriate remedy for the constitutional violations, the district court judge reasoned that since injunctive relief was more appropriate than damages and since Parrish's injuries were not "lasting or severe," Parrish was only entitled to an award of nominal damages. This appeal ensued. Before proceeding to the damage questions presented by this case, we first consider whether the district court erred in holding that Turner's conduct did not violate Giles' First and Eighth Amendment rights.

## I. Giles' First and Eighth Amendment Claims

### A. First Amendment

Giles testified that Turner would randomly open and read his personal mail and that Turner would also taunt him by waving the open mail in front of him. Giles contends that this conduct violated his First Amendment rights.

■■■■ While prisoners have some First Amendment rights in receiving mail, *see Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Meadows v. Hopkins*, 713 F.2d 206, 209–10 (6th Cir.1983), it is clear that prison officials may place reasonable restrictions upon these rights, *Bell v. Wolfish*, 441 U.S. 520, 544–52, 99 S.Ct. 1861, 1876–81, 60 L.Ed.2d 447 (1979). In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly-applied policy, open an inmate's incoming mail. *See Wolff v. McDonnell*, 418 U.S. 539, 574–77, 94 S.Ct. 2963, 2983–85, 41 L.Ed.2d 935 (1974); *Bumgarner v. Bloodworth*, 768 F.2d 297, 301 (8th Cir.1985) (per curiam). Prison security may also require that limitations be placed upon the type and amount of mail a

prisoner may receive. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129–31, 97 S.Ct. 2532, 2539–41, 53 L.Ed.2d 629 (1977). Yet, a prison official's discretion is not unlimited in this regard and several courts have held that mail relating to a prisoner's legal matters may not be read and may only be opened in the prisoner's presence, *Taylor v. Sterrett,* 532 F.2d 462, 477 (5th Cir.1976), *Bach v. Illinois,* 504 F.2d 1100, 1102 (7th Cir.) (per curiam), *cert. denied,* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *Smith v. Robbins,* 454 F.2d 696 (1st Cir.1972); *see Harrod v. Halford,* 773 F.2d 234, 236 n. 1 (8th Cir.1985) (per curiam), *cert. denied* —— U.S. ——, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986); *but see Sostre v. McGinnis,* 442 F.2d 178, 201 (2d Cir.1971) (en banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972),[3] and at least one court has extended these protections to media mail, *Guajardo v. Estelle,* 580 F.2d 748, 759 (5th Cir.1978); *see also Nolan v. Fitzpatrick,* 451 F.2d 545, 547 (1st Cir.1971). Further, the burden remains upon the prison officials to put forth legitimate reasons for interfering with a prisoner's incoming mail. *See Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974); *Brooks v. Seiter,* 779 F.2d 1177, 1180–81 (6th Cir.1985).

■■ In this case, we are not confronted with a regularly applied regulation requiring the opening of all prisoners' incoming mail, *see Meadows,* 713 F.2d at 208–09, or a random interference with a prisoner's mail based upon a reasonable suspicion that the prison's security was being jeopardized. Rather, this case concerns Turner's arbitrary opening and reading of Giles' personal mail. No justification—other than

harassment—has been forwarded for Turner's conduct. A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment. *Cf. Brooks,* 779 F.2d at 1180. Accordingly, we hold that the district court erred in denying Giles' First Amendment claim and remand this claim for further proceedings.[4]

## B. Eighth Amendment[5]

■■ The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment." U.S. Const. amend. VIII. By definition, therefore, not every intrusion upon a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) ("Not every push or shove ... violates a prisoner's constitutional rights."), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault or battery and which, in retrospect, may have been excessive. But, the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment. *See Whitley v. Albers,* —— U.S. ——, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). A violation of the Eighth Amendment nevertheless will occur if the infliction of pain upon a prisoner is both unnecessary and wanton. *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). In determining whether a prisoner's

---

**3.** The Second Circuit has recently indicated that in light of intervening Supreme Court decisions this aspect of *Sostre* may no longer be good law. *Heimerle v. Attorney General,* 753 F.2d 10, 12–13 (2d Cir.1985).

**4.** On remand, the district court should make formal factual findings on this claim in accordance with Fed.R.Civ.P. 52(a), *see supra* note 2, and consider whether Turner would be entitled to good faith immunity for his actions.

**5.** Giles also asserts that Turner's conduct contravened substantive due process under the Fourteenth Amendment. *See Lewis v. Downs,* 774 F.2d 711 (6th Cir.1985) (per curiam). Since the Fourteenth Amendment provides a prisoner with no greater protection than the Eighth Amendment, *Whitley v. Albers,* —— U.S. ——, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986), we consider Giles' claim only under the Eighth Amendment.

claim rises to this level, the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted should be considered. *Cf. Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir.1985) (per curiam). This analysis, however, must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing. *See Whitley*, 106 S.Ct. at 1084–85. We consider the district court's holding in light of these considerations.

■ The district court held that Giles had failed to establish an Eighth Amendment claim because he was not subjected to the full panoply of Turner's misbehavior and because he failed to demonstrate that Turner's actions were the result of a special animus. While we do not take issue with these factual findings, we do not believe that in order to establish an Eighth Amendment violation Giles had to show that he was subjected to all of Turner's aberrant conduct. The question before the district court was not whether Giles suffered as much as Parrish, but rather was whether Turner inflicted unnecessary and wanton pain upon Giles. Similarly, although demonstrating a particularly malicious intent may be important in determining whether a constitutional violation has occurred, we do not believe that this degree of intent is an indispensable element of an Eighth Amendment claim. *See Whitley*, 106 S.Ct. at 1084 ("An express intent to inflict unnecessary pain is not required...."). As with any other case, Giles' case must be scrutinized based upon its own particular facts.

Initially, the actions of Turner towards Giles are devoid of logic or reason. No legitimate penological or institutional objective was furthered by Turner's unexplained

waving of a knife in Giles' face, knife-point extortion of potato chips and cookies, incessant taunting, or failure to relay Giles' requests for medical care to the nurses. Next, Turner's conduct was extreme. Assaults with a knife, theft, and the deliberate failure to provide needed medical care are serious occurrences in any setting. Another important factor is that Turner's behavior, specifically, the paraplegic slurs, acted to strip Giles of his dignity and reinforce the fact that Giles was dependent upon Turner for his continued well-being. Any reasonable person would suffer significant mental anguish knowing that his health was in the hands of a person performing the type of deviant acts which Turner did. Finally, all of the foregoing is to an extent exacerbated by Giles' paraplegic condition; Giles' condition placed him at the mercy of Turner and prevented him from attempting to avoid or mitigate his contact with or reliance upon Turner.

■ Considering Turner's behavior towards Giles in its totality, we conclude that Turner's actions inflicted unnecessary and wanton pain upon Giles. Causing a prisoner to sit in his own feces, assaulting a prisoner with a knife, extorting food from a prisoner, and verbally abusing a prisoner are all unnecessary acts which result in pain being inflicted. Further, simply the type, number, and seriousness of the acts committed demonstrate that they were performed wantonly. The assaults, verbal abuse, and failure to relay Giles' requests for care were all done intentionally. We hold, therefore, that the district court erred in determining that Turner had not violated Giles' Eighth Amendment rights and remand this issue for further consideration.[6] We now consider the damages issues presented by this appeal.

## II. Damages[7]

The district court held that Parrish was only entitled to nominal damages because

---

6. *See supra* note 4.

7. The district court, although finding that Parrish's and Giles' conditions of confinement were

unconstitutional, held that the defendants committed these violations while acting in their official capacities. Although not considered by the district court or either party on appeal, we note

injunctive relief was more efficacious than damages and because his injuries were not "lasting and severe." We first consider whether the presence of injunctive relief may vitiate a claim for damages.

The starting point for analyzing damages for violations of constitutional rights is the common law. *Memphis Community School District v. Stachura,* — U.S. —, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 253–56, 98 S.Ct. 1042, 1046–48, 55 L.Ed.2d 252 (1978). At common law, once an injunction had been granted, damages were commonly given for the torts committed prior to and pending the suit. Restatement (Second) of Torts § 951(a) (1979); Restatement (Second) of Torts § 944 comment g (1979) ("When the injunction is granted against the continuance or repetition of torts, it has long been the practice to give, in the same suit, damages for the tortious

conduct anterior to trial...."); *see Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). The district court did not cite nor have we found any precedent expressly holding to the contrary.[8] Furthermore, no reason exists to deviate from the common law rule in this respect. A plaintiff injured by a series of constitutional torts, like any other tort plaintiff, should be able to recover "for all harm past, present and prospective." Restatement (Second) of Torts § 910 (1979). We hold, therefore, that the availability of injunctive relief fails to affect an attendant claim for damages. Hence, we consider the damage standards applicable to this case.

### A. First Amendment.[9]

This Court has recently held that general damages[10] are presumed to occur when First Amendment rights are

---

that absent waiver the Eleventh Amendment bars the imposition of damages in an official capacity suit against state officials. *Kentucky v. Graham,* — U.S. —, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Spruytte v. Walters,* 753 F.2d 498, 512 (6th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). On remand, the district court should consider whether the Eleventh Amendment bars damages for these constitutional violations and, since the district court's holding in this regard may moot the issue, we decline to consider the damages, if any, which Parrish and Giles would be entitled to for these unconstitutional conditions of confinement.

**8.** Two cases have made statements indicating that the availability of injunctive relief may obviate the need to grant damages for a constitutional violation. *Hunter v. Auger,* 672 F.2d 668 (8th Cir.1982); *Jacobson v. Tahoe Regional Planning Agency,* 474 F.Supp. 901 (D.Nev.1979). In *Hunter,* the court, after holding that insufficient evidence existed to support an award of compensatory damages, noted that "[m]oreover" plaintiff's rights had been "fully vindicated" by declaratory and injunctive relief. *Hunter,* 672 F.2d at 677. We do not read this single statement, without citation of authority, as adopting a rule that injunctive relief may be granted in lieu of damages. Rather, in light of the court's holding that insufficient facts existed to support an award of compensatory damages, we view the court's reference to the adequacy of injunctive relief as gratuitous and unnecessary to the opinion.

In *Jacobson,* the district court judge indicated that damages might not be an appropriate remedy when injunctive and declaratory relief would be adequate. *Jacobson,* 474 F.Supp. at 903. However, the district court's statements, in this regard, were compelled by its holding that, as a matter of law, the plaintiffs were precluded from recovering damages from the defendants. *Id.* Thus, we do not find the language in *Jacobson* inconsistent with the result we reach in this opinion.

**9.** The district court also held that Turner's interference with Parrish's mail violated substantive due process under the Fourteenth Amendment. We do not believe that, in a suit concerning a prison official's interference with a prisoner's mail, substantive due process provides the prisoner with any greater protection or right to damages than the specific guarantees of the First Amendment. *Cf. Whitley,* 106 S.Ct. at 1088. In any event, we would be hesitant to hold that Turner's conduct in handling Parrish's mail considered by itself and in the prison context was "so offensive to human dignity" as to shock our conscience. *Rochin v. California,* 342 U.S. 165, 172, 174, 72 S.Ct. 205, 209, 210, 96 L.Ed. 183 (1952).

**10.** Throughout this opinion we use the term "general damages" in accordance with the common-law definition, i.e., "'[g]eneral damages' are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated...." Restatement (Second) of Torts § 904(1) (1979).

violated. *Walje v. City of Winchester, Kentucky,* 773 F.2d 729, 731–32 (6th Cir. 1985); *accord Stachura,* 106 S.Ct. at 2545 (noting that it may be appropriate to presume general damages from some constitutional violations). The district court, thus, erred in requiring Parrish to establish a "lasting or severe" injury in this context and, accordingly, we remand Parrish's First Amendment violations for a determination of general damages. We caution the district court, however, that Parrish may not recover any damages for the inherent value of his First Amendment rights violated. *See Stachura,* 106 S.Ct. at 2544 ("no room" for jury's perception of importance of constitutional right). Instead, on remand, the district court judge should determine whether Turner's actions in interfering with Parrish's mail and phone calls caused Parrish any pain, suffering, emotional distress, or impairment of employment prospects. *Hobson v. Wilson,* 737 F.2d 1, 61 & n. 173 (D.C.Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Next, we turn to the violations of Parrish's Eighth Amendment rights.

**B. Eighth Amendment.[11]**

 We begin our analysis of damages for Eighth Amendment violations recognizing that language exists in some of this Court's prior decisions which indicates that general damages may be presumed for the violation of any substantive constitutional right. *See Walje,* 773 F.2d at 731 ("[I]n Section 1983 actions establishing violations of substantive constitutional rights, general damages may be awarded even if there is no showing of actual injury."); *Brandon v. Allen,* 719 F.2d 151, 154–55 (6th Cir. 1983) (indicating general damages available for violations of substantive constitutional rights), *rev'd on other grounds sub nom. Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *see generally Owen v. Lash,* 682 F.2d 648, 657–59 (7th

Cir.1982) (Stewart, J., discussing procedural/substantive controversy); *Ganey v. Edwards,* 759 F.2d 337, 340–41 (4th Cir.1985) (citing *Brandon* as adopting procedural/substantive dichotomy). Since the prohibition against the imposition of cruel and unusual punishment is a substantive constitutional right, that is, derived from the Eighth Amendment, the application of a substantive/procedural dichotomy to this case would lead to the result that Parrish would be entitled to general damages for the constitutional violation. We believe, however, that such a dichotomy is contrary to the Supreme Court's teaching in *Carey* and to the analysis developed by this Court in *Walje* and *Brandon.*

First, the Supreme Court recently re-affirmed its holding in *Carey v. Piphus,* 435 U.S. 247, 258, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252 (1978), that the starting point for analyzing damages under Section 1983 is the common law and indicated that substantive constitutional rights are subject to the same damage principles as procedural rights. *Stachura,* 106 S.Ct. at 2542–43. In *Stachura,* the Court explicitly rejected the argument that damages could be given for the value of *substantive* constitutional rights as misperceiving *Carey*'s analysis; the Court held that *Carey* did "not establish a two-tier system of constitutional rights." *Id.* at 2544. The application of a substantive/procedural dichotomy, therefore, would be contrary to *Carey*'s and *Stachura*'s admonitions for courts to first consider the common law, not whether the constitutional provision violated was substantive or procedural. *See Doe v. District of Columbia,* 697 F.2d 1115, 1122–23 (D.C. Cir.1983); *Lancaster v. Rodriguez,* 701 F.2d 864, 866 (10th Cir.) (per curiam), *cert. denied,* 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983); *see generally* Note, *Damage Awards for Constitutional Torts: A Reconsideration After* Carey v. Piphus, 93 Harv.L.Rev. 966, 972–74 (1979–

---

**11.** Although the district court also found that Parrish's Fourteenth Amendment rights were violated by Turner's actions, we do not believe that in a suit by a prisoner alleging the imposi-

tion of cruel and unusual punishment that the Fourteenth Amendment provides any greater rights to damages than the Eighth Amendment. *See Whitley,* 106 S.Ct. at 1088.

80). Second, this Court's opinions in *Brandon* and *Walje*, despite some possible language to the contrary, did not apply a substantive/procedural dichotomy. Rather, in both cases, this Court looked to the common law and applied the most analogous common-law rule of damages. *Walje*, 773 F.2d at 731–32 (discussing damages at common law for violations of a person's free speech and voting rights); *Brandon*, 719 F.2d at 154–55 (analogizing Fourth Amendment violations to common-law assault and battery). Third, a substantive/procedural dichotomy focuses upon the wrong issue. The purpose of damages under Section 1983 is to compensate for the injury caused by the constitutional deprivation. *Smith v. Heath*, 691 F.2d 220, 226 (6th Cir.1982); *Morrow v. Igleburger*, 584 F.2d 767, 769 (6th Cir.1978), *cert. denied*, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979). Thus, the focal point of the inquiry must be the injury sustained and the appropriate means of redressing it.

■ Last, although a cursory glance at the case law would indicate that the circuits are split on whether *Carey*'s actual injury requirement applies to violations of substantive constitutional rights, *see Ganey*, 759 F.2d at 340–41; *Owen*, 682 F.2d at 657–59, this "split" is more illusory than real. Although those courts which have refused to apply *Carey*'s actual injury requirement to substantive constitutional violations have often distinguished *Carey* on the ground that it only concerned the deprivation of procedural rights, the majority of these cases have, like our decisions in *Brandon* and *Walje*, proceeded to analogize the constitutional interests at issue to the law of torts. *See Bell v. Little Axe Independent School District No. 70 of Cleveland County*, 766 F.2d 1391, 1408–12 (10th Cir.1985) (analogizing First Amendment claims to common-law denial of voting rights actions); *Hobson*, 737 F.2d at 61–63 & n. 173 (analyzing possible damages which might occur from a First Amendment violation); *Doe*, 697 F.2d at 1122–1124 (analogizing cruel and unusual punishment to common-law tort rules); *Herrera v. Valentine*, 653 F.2d 1220, 1229–31 (8th Cir.1981) (analyzing relationship between Fourth Amendment violations and common-law dignitary torts); *Halperin v. Kissinger*, 606 F.2d 1192, 1207 & n. 100 (D.C.Cir. 1979) (Fourth Amendment rights of a much different character than procedural due process rights), *aff'd by an equally divided court*, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981) (per curiam). The confusion in this area apparently stems from two decisions in which the courts, with very little analysis, applied *Carey*'s actual injury requirement to the denial of First Amendment rights. *Kincaid v. Rusk*, 670 F.2d 737, 745–46 (7th Cir.1982);[12] *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir.1980);[13] *see also Smith v. Coughlin*, 748 F.2d 783, 789 (2nd Cir.1984) (applying an actual injury requirement to a Sixth Amendment violation without any analysis). Other than these two "literalist" interpretations of *Carey*, however, this Court and other Courts of Appeals have been

---

**12.** The current vitality of *Kincaid's* literal application of *Carey* in the Seventh Circuit is in question. While *Kincaid* has been followed on its facts, *see Crawford v. Garnier*, 719 F.2d 1317, 1324–25 (7th Cir.1983) (per curiam), two decisions evidence a willingness to follow an analytical approach to damages, *see Lenard v. Argento*, 699 F.2d 874, 888–89 (7th Cir.), *cert. denied* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Owen*, 682 F.2d at 657–59; *see also Freeman v. Franzen*, 695 F.2d 485, 494 (7th Cir.1982) (since actual injuries shown no need to consider if damages may be presumed for a violation of substantive due process), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983). The latest decision of the Seventh Circuit, *Madison County Jail Inmates v. Thompson*, 773 F.2d 834 (7th Cir.1985), in dictum stated, "It is true that *Owen* and *Lenard* recognize that under certain circumstances it is proper to presume damages." *Id.* at 841 (footnote omitted). Thus, the court's mechanical application of *Carey* in *Kincaid* may be an anomaly.

**13.** The Fifth Circuit is apparently following its decision in *Familias Unidas* and applying *Carey*'s actual injury requirement mechanically to the violation of all constitutional rights without analysis. *See Farrar v. Cain*, 756 F.2d 1148, 1152 (5th Cir.1985); *Ryland v. Shapiro*, 708 F.2d 967, 976 (5th Cir.1983); *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1220 (5th Cir.1982); *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981).

attempting to follow *Carey*'s mandate of "adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." *Carey*, 435 U.S. at 258, 98 S.Ct. at 1049. The Supreme Court in *Stachura* indicated its approval of this analytical approach to damages by acknowledging that in some cases damages may be presumed merely from the act constituting the constitutional violation. *Stachura*, 106 S.Ct. at 2545; *see also id.* at 2546 (Marshall, J., concurring) (emphasizing "that the violation of a constitutional right, in proper cases, may itself constitute a compensable injury"). Accordingly, we decline to adopt a substantive/procedural framework for analyzing damages for violations of constitutional rights and proceed to consider the appropriate measure for damages under the Eighth Amendment.

 Our analysis must start with the nature and type of interests protected by the Eighth Amendment. *See Carey*, 435 U.S. at 259, 98 S.Ct. at 1050. In generalities, the Eighth Amendment proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366–67, 30 S.Ct. 544, 548–49, 54 L.Ed. 793 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion). In concrete terms, the Eighth Amendment protects prisoners from being severely beaten, *e.g., Collins v. Hladky*, 603 F.2d 824 (10th Cir.1979) (per curiam), intentionally denied medical care for serious medical needs, *e.g. Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976), recklessly subjected to violent attacks or sexual assaults, *e.g., Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984), and denied "the basic elements of hygiene," *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir.1967). As this short list demonstrates, the Eighth Amendment has been interpreted "in a flexible and dynamic manner," *Gregg*, 428 U.S. at 171, 96 S.Ct. at 2924, to address numerous acts and omissions. With this in mind, we consider what showing is necessary to recover damages for an infringement of Eighth Amendment rights.

 Initially, we decline to hold that general damages may be presumed from an Eighth Amendment violation. General damages are presumed to flow from some tortious conduct because "the existence of the harm may be assumed and its extent is inferred as a matter of common knowledge." Restatement (Second) of Torts § 904(1) comment a (1979); C. McCormick, Handbook on the Law of Damages §§ 8, 14, at 33–35, 53 (1935). Due to the numerous interests protected and types of conduct prohibited by the Eighth Amendment, rarely will the existence and extent of harm be apparent from the simple allegation that an Eighth Amendment violation has occurred. Next, unlike suits under the First and Fourth Amendments, Eighth Amendment claims cannot be classified under a single traditional tort doctrine; no one tort doctrine is sufficiently expansive to cover the array of conduct prohibited by the Eighth Amendment. Further, unlike injuries emanating from a First Amendment violation, injuries occurring in an Eighth Amendment context are not likely to be of an evanescent nature. The establishing of cruel and unusual punishment will often require the showing of physical abuse from which injuries and concomitant damages will normally be easy to prove. *See Lancaster*, 701 F.2d at 866 ("would appear much easier to demonstrate damages in a cruel and unusual [punishment] case"); *Doe*, 697 F.2d at 1124 n. 24 (mental suffering easier to prove in cruel and unusual punishment cases). We hold, therefore, that general damages may not be presumed whenever the Eighth Amendment is violated and turn to what type of injury is needed to recover damages.

At first blush, it would seem appropriate to simply follow *Carey* and hold that an "actual injury" is needed to obtain damages under the Eighth Amendment. *See Lancaster*, 701 F.2d at 866; *see also Mad-*

*ison County Jail Inmates v. Thompson,* 773 F.2d 834, 844 (7th Cir.1985). Upon further examination of the practicalities and the ramifications of requiring a prisoner to *always* establish an actual injury as a prerequisite to obtaining damages, we decline to adopt such a rule. As we have previously discussed, the Eighth Amendment protects prisoners from a wide variety of conduct. The numerous types of tortious conduct and resultant injuries which the Eighth Amendment redresses militate heavily against our adopting an actual injury standard, because we simply cannot be certain that an actual injury requirement would be reflective of the common law or an appropriate prerequisite to obtaining damages in every situation.[14] *Cf. Doe,* 697 F.2d at 1124 n. 24 (noting that in some cases emotional distress might be inferred from an Eighth Amendment violation). In fact, having held that Eighth Amendment violations are not capable of being analogized to any single type of tortious conduct, it would be anomalous for us to assert that one single damage theory will sufficiently redress every act or condition constituting cruel and unusual punishment. Also, a single Eighth Amendment violation may subsume several separate and distinct acts. The requiring of actual injury in such cases provides little guidance: must the prisoner show actual injury flowing from one, the majority, or all of the tortious acts? Besides problems of application, an actual injury requirement in these "totality of the circumstances" cases may be inconsistent with the common law, contrary to the purpose the actual injury requirement is supposed to serve. For example, if the constitutional violation is composed of assaults, batteries, or other dignitary torts, an actual injury requirement would be contrary to the common-law rule which presumes general damages from this type of tortious conduct. *See Walje,* 773 F.2d at 731–32; D. Dobbs, Handbook on

the Law of Remedies §§ 7.1, 7.3 (1973). Finally, a wooden application of an actual injury requirement is contrary to the Supreme Court's decision in *Carey.* The Court, in *Carey,* warned that "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Carey,* 435 U.S. at 264–65, 98 S.Ct. at 1052–53. Thus, an actual injury should only be required when it appropriately remedies the constitutional violation. Since an across-the-board actual injury requirement in the context of the Eighth Amendment presents serious problems of application and fails to consider that in some instances damages may be inferable merely from the conduct constituting the constitutional violation, we decline to hold that establishing an actual injury is a necessary predicate to receive damages for an Eighth Amendment violation.

▮ Instead, we believe that each tortious act comprising or composing the Eighth Amendment violation should be considered on its own merits. *Accord Doe,* 697 F.2d at 1124 n. 21 (noting that analogies may be drawn to various common-law torts). Although we recognize that this is an *ad hoc* approach, our holding is necessitated by the broad range of conduct which may fall within the ambit of cruel and unusual punishment. In addition, this approach will best serve to implement the common law of damages. By considering the damage consequences of each tortious act, a prisoner will be forced to carry the same burdens and be benefitted by the same presumptions as any other tort plaintiff. More importantly, by tailoring the damages to the specific interests invaded, our approach will greatly reduce the

---

14. For example, in a case in which a person has been unconstitutionally incarcerated for a "status offense," *see Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), or in which a prisoner's punitive confinement is grossly disproportionate, *see Wright v. McMann,*

460 F.2d 126, 132–33 (2d Cir.), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972), the closest commonlaw analogy apparently would be false imprisonment for which general damages were presumed at common law. *See McCormick, supra,* § 107, at 375–76.

chances that a prisoner will either be under or over compensated for his injuries. *See Stachura,* 106 S.Ct. at 2543; *Carey,* 435 U.S. at 258–59, 98 S.Ct. at 1049–50. We, therefore, turn to the conduct presented in this case.[15]

■ Turner's waving of a knife in front of Parrish obviously constituted a common-law assault. *See* Restatement (Second) of Torts § 21 (1979). As previously discussed, at common law general damages were presumed to flow from an assault. *See Brandon,* 719 F.2d at 154–55; D. Dobbs, Handbook on the Law of Remedies § 7.1, at 528–29 (1973). Consequently, we hold that Parrish is entitled to general damages for Turner's assaults upon him.

Turner's deprecation of Parrish presents a less clear case. At common law, verbal abuse alone generally did not rise to the level of tortious conduct in the absence of physical injury resulting from the abuse. 2 F. Harper, F. James & O. Gray, The Law of Torts §§ 9.1, 9.2 (1985). The law, however, has been changing in this area to allow recovery in the absence of a physical injury if the conduct by the tortfeasor is both extreme and outrageous and causes severe emotional distress. Restatement (Second) of Torts § 46 (1979); *see, e.g., Ross v. Burns,* 612 F.2d 271, 273 (6th Cir.1980) (applying Michigan law). In this case, we find it unnecessary to decide which standard applies because even if physical injury is not a prerequisite to recovery, insufficient factual findings exist for us to conclude, for the first time on appeal, that Turner's taunting was extreme and outrageous or that Parrish suffered severe emotional distress from this abuse. Hence,

on remand, the district court should make the necessary factual determinations to resolve these questions.

■ Finally, we consider the appropriate measure of damages for Turner's deliberate failure to provide Parrish with medical care.[16] This Court previously has dealt with the appropriate standard for damages for a denial of medical care, albeit in the context of pre-trial detainees. *Shannon v. Lester,* 519 F.2d 76 (6th Cir.1975). In *Shannon,* we held that a plaintiff may recover for any injury caused by the delay in care and any concomitant pain, suffering, or mental anguish. *Shannon,* 519 F.2d at 79–80; *accord Fielder v. Bosshard,* 590 F.2d 105, 110–11 (5th Cir.1979); *Walnorch v. McMonagle,* 412 F.Supp. 270, 277 (E.D.Pa.1976). Although *Shannon* was based on the Fourteenth Amendment, we believe that its principles are equally applicable to Eighth Amendment claims since the tortious conduct and resultant injuries are the same and since no principled reason exists why a different standard of damages should apply in an Eighth Amendment context. Thus, on remand, the district court should consider whether and to what extent Parrish was injured by the delay in receiving medical care.

For the foregoing reasons, the judgment of the district court is reversed and remanded for further proceedings not inconsistent with this opinion.[17]

---

**15.** The district court cited no authority for its holding that a "lasting and severe" injury is needed to establish a claim for damages. Besides lacking any support either in the case law or in the common law, requiring a lasting and severe injury as a prerequisite to the obtaining of damages for an Eighth Amendment violation is inconsistent with the principle of providing "fair compensation for injuries caused by the deprivation of a constitutional right." *Carey,* 435 U.S. at 258, 98 S.Ct. at 1049. We, therefore, reject imposing such a significant burden on Eighth Amendment plaintiffs.

**16.** We include in this category Turner's placing of Parrish's food tray out of his reach.

**17.** The district court made no findings concerning the appropriateness of assessing the punitive damages against Turner requested by the plaintiffs. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). On remand, the district court should do so.