865 F.2d 258
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edgar JOHNSON, Plaintiff-Appellant,
v.
MICHIGAN DEPARTMENT OF CORRECTIONS and Daryl Anderson, Defendants,
William Grant, Bruce Cummings, and Dick Kapenga, Defendants-Appellees.
 No. 88-1131.
 United States Court of Appeals, Sixth Circuit.
 Dec. 13, 1988.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Edgar Johnson, a black inmate at Camp Waterloo in Grass Lake, Michigan, filed this pro se 42 U.S.C. Sec. 1983 action against prison officials alleging that because of his race he was deprived of an opportunity to take a state electrician's examination. Specifically, Johnson alleged that white inmates were allowed to travel to Camp Waterloo to take vocational examinations, while Johnson under the same circumstances was not allowed to take such an examination. He alleges that this denial was racial discrimination and therefore a violation of his rights under the equal protection clause. He further contends that defendant Dick Kapenga used abusive language to him in violation of his eighth amendment rights. The district court granted summary judgment to defendants-appellees and Johnson appealed. We conclude that the district court was correct in dismissing Johnson's eighth amendment claim, but was in error in dismissing Johnson's claim for alleged racial discrimination. We therefore AFFIRM in part and REVERSE in part and REMAND.
 
 
 2
 The magistrate, to whom the claims were referred for report and recommendation, recommended that defendants' motions for summary judgment be granted as to Johnson's eighth amendment claim and be denied as to Johnson's equal protection claim. No objections to this recommendation were filed. Despite the lack of objections, the district court rejected the magistrate's report and recommendation as to the equal protection claim and granted the defendants' motions for summary judgment on both claims.
 
 
 3
 In considering the motions for summary judgment, the district court found that Johnson had not created an issue as to the equal protection claim or the eighth amendment claim. Regarding the equal protection claim, the court found that Johnson had merely shown that one white inmate "evaded" the camp leave policy, not that the defendant state officials had "applied" or "administered" the leave policy in a discriminatory manner.[1] Thus, as the court concluded, Johnson had not demonstrated a violation of the equal protection clause. The court further questioned whether the defendants should be considered to have acted under color of state law when they had not sanctioned the evasion of the leave policy. As to the eighth amendment claim, the court agreed with the magistrate that Johnson had not shown he was in any way prejudiced or injured by the abusive language and thus had not stated such a claim.
 
 I. Factual Background
 
 4
 The summary judgment record as accepted by the district court showed the following. On May 7, 1986, Johnson was scheduled to take an electrician's examination administered by the Michigan Department of Labor in Lansing, Michigan. Daryl Anderson, maintenance supervisor at Camp Waterloo, had approached Johnson, encouraged him to take the examination, and offered to take him to Lansing. Johnson paid the appropriate $15 and prepared for the examination under the guidance of Anderson.
 
 
 5
 In April 1986, Anderson told Johnson that in order to take the trip for the examination Johnson would have to obtain permission from defendant Bruce Cummings, the supervisor at Camp Waterloo. On April 30, 1986, Cummings denied Johnson's request, stating that there was an unwritten policy that prisoners could only take the test if they were close to a parole date, eligible for community furlough, or able to pay for a staff escort and use of a state vehicle. Johnson informed Cummings at the time that white inmate Don Wilkinson was also planning on taking the examination on May 7.
 
 
 6
 Johnson then attempted to appeal that decision to defendant Warden William Grant. In his attempts to contact Warden Grant on the matter, Johnson was referred to defendant Kapenga, physical plant supervisor at the camp. Kapenga allegedly told Johnson in an abusive manner that he could not take the examination. On May 5, 1986, Warden Grant wrote Johnson a letter in response to Johnson's allegations and stated that the warden himself denied Johnson's request and that "[a]ny other staff who have carried a prisoner to take an examination without obtaining proper approval is in violation of my orders and would be subject to corrective action." Exhibit D, Initial Pro se Complaint, Letter of May 5, 1986 from Warden Grant to Edgar Johnson. In that same letter, the warden emphatically denied that race was a factor in his denial of Johnson's request. Id. at 2. The warden noted that there were no specific Michigan Department of Corrections policy directives dealing with requests to take vocational examinations. Nevertheless, those persons who qualified under the "guise" of PD-DWA 44.01, temporary release from correctional facilities, were allowed to leave the correction facilities to take various civil service examinations. Because Johnson was serving two sentences of 25 to 75 years for armed robbery and was not eligible for furlough privileges until on or after March 26, 1988, Warden Grant denied his request to take the examination. However, Grant did give Johnson the option of paying for an escort and transportation if he wanted to take the examination.
 
 
 7
 Don Wilkinson, a white inmate serving a life sentence, was allowed to take the electrician's examination three times. In November 1985, Anderson had taken Wilkinson to Lansing for the first examination, while Norman Stone, public works foreman at the camp, had taken Wilkinson for the second examination in March 1986. In addition, Wilkinson had taken a civil service examination under similar circumstances. On May 7, 1986, Stone again accompanied Wilkinson for his third try on the electrician's examination. Significantly, Wilkinson did not qualify for such treatment under the policy claimed to have been in effect by Warden Grant. Further, Wilkinson did not pay for his transportation and escorts.
 
 
 8
 In addition, Johnson claimed, by way of a supplemental submission, which facts the district court accepted for purposes of ruling on defendants' motion for summary judgment, that another white inmate, Sleeper, had been allowed to take a civil service examination although he did not satisfy the alleged requirements for doing so. Johnson also, by the supplemental submission accepted as fact by the district court, claimed that Hector Cortes, a black inmate, had likewise been denied an opportunity to take a civil service examination because he had no funds to pay for a guard and transportation.
 
 III. Equal Protection Claim
 
 9
 In their affidavits in support of their motion for summary judgment, defendants contended, in essence, that the policy of the camp was as set out in Grant's affidavit and that, if Johnson and Cortes were treated differently from Wilkinson and Sleeper, this different treatment was a result of a mistake in administering the policy and not because of racial considerations.
 
 
 10
 The district court, on the other hand, granted summary judgment on a different theory than that asserted by defendants. As the district court stated: "Construing plaintiff's contentions in the most favorable light, the Court finds that the plaintiff has failed to state an equal protection claim. Plaintiff's claim is not that the policy was applied in a discriminatory fashion, but rather that the policy was evaded in a discriminatory fashion." JA at 32.
 
 
 11
 We cannot agree with the district court that there would be no violation of the equal protection clause if the policy was "evaded" in a discriminatory manner. Discrimination on the basis of race is a denial of equal protection whether the discrimination is in enforcement of a discriminatory policy or in evasion of a nondiscriminatory policy.
 
 
 12
 The district court granted summary judgment to the defendants on an alternative basis. The court asserted that if Wilkinson was allowed to leave the camp without paying for an escort and transportation, he was allowed to do so in violation of Grant's policy. Since the defendants had not sanctioned this deviation from policy, the district court concluded that the defendants' conduct was not under color of state law. In other words, if the defendants did not participate in racial discrimination, they were not acting under color of state law.
 
 
 13
 We believe that the district court pointed to a problem, but the problem is not whether the deprivation was under color of state law. Since the defendants were state officials acting in that capacity, if they played a part in racial discrimination, it would of necessity be under color of state law. The problem is whether there is sufficient support in this summary judgment record that the defendants knowingly played a part in the different treatment of Johnson and that this treatment was racially motivated. The defendants, while not denying Johnson's contentions that he and Cortes were treated differently from Wilkinson and Sleeper, simply claim that, if so, the defendants were unaware of this treatment, that this treatment was in violation of the camp's policy, and not racially motivated.
 
 
 14
 We believe that summary judgment should not have been granted in spite of defendants' denial of responsibility. It is undisputed in the record at this point that Johnson, a black, was denied the opportunity to take the examination under the same circumstances that Wilkinson, a white, was allowed to do so three times. Significantly, Wilkinson was allowed to take an examination on May 7, 1986 after Johnson had been denied the opportunity by Grant on May 5, 1986. Moreover, Sleeper, a white prisoner, was allowed to take an examination while Cortes, a black prisoner, was denied the right. An inference may be drawn from these uncontested facts that those in charge of the camp such as Grant, Cummings and Kapenga, knew that these discriminatory deviations from policy were taking place and that they were discriminatory.
 
 
 15
 We therefore conclude that, on this limited record, the district court erred in granting summary judgment to the defendants with respect to Johnson's equal protection claim.
 
 IV. Abusive Language--Eighth Amendment claim
 
 16
 Plaintiff Johnson also appeals the dismissal of his claim that defendant Kapenga used abusive language against him in violation of his constitutional rights. We agree with the district court that this claim did not rise to the level of an eighth amendment violation because the plaintiff did not claim that he was in any way prejudiced or injured by the alleged abusive language. See Parrish v. Johnson, 800 F.2d 600, 604-05 (6th Cir.1986) (abusive language by itself does not rise to level of eighth amendment violation unless coupled with other factors). In our view, the district court properly concluded that the plaintiff had failed to state a claim under the eighth amendment.
 
 V. Conclusion
 
 17
 For the foregoing reasons, we AFFIRM the district court decision granting summary judgment for defendants on plaintiff's abusive language claim. However, we REVERSE the district court's decision granting summary judgment for defendants on plaintiff's equal protection claim and REMAND to the district court for proceedings consistent with this opinion.
 
 
 
 [1]
 As the district court reasoned:
 Construing plaintiff's contentions in the most favorable light, the Court finds that the plaintiff has failed to state an equal protection claim. Plaintiff's claim is not that the policy was applied in a discriminatory fashion, but rather that the policy was evaded in a discriminatory fashion. Where a law or policy is administered in a discriminatory fashion, equal protection is violated. Yick Wo v. Hopkins, 118 U.S. 356 (1886). However, such discrimination in administration has not been demonstrated by the plaintiff. He has alleged that one white prisoner evaded the policy requirements regarding the exams. There is no showing that other white prisoners evaded Warden Grant's policy, nor that the policy was only adhered to when a black prisoner was involved. Although the plaintiff has submitted the affidavit of a fellow inmate, Hector Cortes, in support of his claims, the affidavit does not establish that racial discrimination occurred. Further, the plaintiff was offered the opportunity to attend the electrician's exam if he paid for staff escort and transportation. This offer was refused. In view of these factors, the Court concludes that plaintiff has not demonstrated a violation of equal protection.
 JA at 32-33 (all references to the Joint Appendix will be abbreviated "JA").