19 F.3d 1433
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Deborah HENNING, Plaintiff-Appellant
v.
Dewey SOWDERS, et al., Defendants-Appellees.
 No. 93-5126.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1994.
 
 Before: KEITH and NORRIS, Circuit Judges; and ZATKOFF, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant, Deborah Henning ("Henning"), appeals the district court's grant of summary judgment in favor of the Defendants-Appellees, and its subsequent dismissal of her prisoner's civil rights action. Pursuant to 42 U.S.C. Sec. 1983, Henning alleged Defendant-Appellees violated her Fourth, Eighth and Fourteenth Amendment rights. The Defendants-Appellees moved for dismissal for failure to state a claim, and in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(b). Finding Henning failed to state a cognizable claim, the district court granted summary judgment to Defendants-Appellees. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On the evening of December 21, 1990, Paula McPherson ("McPherson"), a corrections officer working in the Special Management Unit ("SMU") at Northpoint Training Center ("NTC") in Burgin, Kentucky, overheard an inmate conversation alleging Henning had cigarettes and a lighter in her cell. Both are considered contraband and prohibited. Consequently, the following day corrections officials searched Henning's cell but failed to retrieve a lighter. A few hours later McPherson overheard inmates discussing the fruitless search, and suggested that no lighter was found because it was inside her vagina.
 
 
 3
 Based on this information, at 7:25 p.m. on December 22, 1990, McPherson and Correctional Officer Bobbi Barto ("Barto") took Henning to a bathroom and conducted a strip search. When Henning bent over, Barto saw a blue object protruding from Henning's vagina. The officers then handcuffed Henning and removed her from the bathroom.
 
 
 4
 While Barto sought instructions from supervisors, Henning consented to a body cavity search, but withdrew her consent upon the arrival of Registered Nurse Osa Gooch ("Gooch") at approximately 7:45 p.m. Barto's supervisor, Lieutenant Lonnie Matlock ("Matlock"), then advised Captain Timothy Napier ("Napier") of the situation. Napier contacted Duty Officer Glenn Hedgespeth, who authorized an involuntary body cavity search.
 
 
 5
 Prison personnel escorted Henning to the medical department in restraints, and placed her on the examination table. In addition to Barto, male corrections officers Anthony Richardson ("Richardson"), Charles Howell ("Howell") and Bret Chamberlin ("Chamberlin") restrained a kicking and resisting Henning.
 
 
 6
 After Henning was secured. Gooch removed Henning's pants and underclothes. Performing the body cavity search with the sheet covering Henning, Gooch felt the lighter, but it was "too far up" Henning's vagina to be retrieved. After repeated unsuccessful attempts by Gooch, Captain Napier called NTC's physician, Dr. George Noe ("Noe"), and requested he conduct a body cavity search on Henning. While waiting for Noe to arrive, officers placed Henning in a sitting position, covered her with the sheet, and placed a towel between her legs to absorb bleeding resulting from her menstrual cycle.
 
 
 7
 An hour later, at approximately 9:45 p.m., Noe arrived at the medical department. As Matlock, Barto, Howell, Richardson and Chamberlin secured Henning, who again resisted, Noe remarked he "was sure she (Henning) was no stranger to a rear entry." Noe initially attempted to retrieve the object with Henning lying on her side, but was unsuccessful. Henning was then bent over with her stomach on the examining table and her feet on the floor. Within 10 minutes, Noe retrieved a blue "Bic" type lighter from Henning's vagina. Throughout both searches, Barto covered Henning's genitals with the sheet, and Noe and Gooch performed their searches by reaching under the sheet.
 
 
 8
 Officials asked Henning, who was upset and crying, whether she preferred to walk back to her cell or be carried on a stretcher. Henning did not respond, and was carried to her cell on a stretcher at approximately 11:00 p.m. Noe attempted to examine Henning to ensure she had no injuries, but Henning refused. The following day, Henning again refused to see Noe.
 
 
 9
 Officer Anthony Myers videotaped the entire body cavity search.
 
 
 10
 After reviewing proposed findings of fact and the recommendation of a United States Magistrate Judge, the United States District Court for the Eastern District of Kentucky dismissed Henning's claims in a memorandum opinion of January 4, 1993. This timely appeal followed.
 
 II.
 
 11
 On appeal, Henning asserts the body cavity search violated her Fourth Amendment right to privacy, Defendants-Appellees employed excessive force in violation of the Eighth Amendment, and that the Prison Adjustment Committee denied her procedural due process guaranteed by the Fourteenth Amendment by failing to watch the videotape. We discuss each of these issues separately.
 
 
 12
 Summary judgment is proper when there is no "genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment assumes the initial burden demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). Once demonstrated, the burden shifts to the non-movant to show a genuine issue exists. To establish a genuine issue, the non-moving party "must point to evidence in the record upon which a reasonable jury could find for it." Martin v. Ohio Turnpike Commission, 968 F.2d 606, 609 (6th Cir.1992) cert. denied, --- U.S. ----, 113 S.Ct. 979 (1993). All facts and inferences are drawn in the light most favorable to the non-moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Martin, 968 F.2d at 609. This court reviews a district court's grant of summary judgment de novo. Martin, 968 F.2d at 609; EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 A.
 
 13
 Arguing a body cavity search was not necessary to retrieve the lighter, Henning first asserts the district court erred in finding her Fourth Amendment right to privacy was not violated by the searches. Noting that the search did not "shock the conscience" because Henning was a prison inmate who gave officials reason to believe she violated policy, the district court rejected Henning's invasion of privacy claim. We agree.
 
 
 14
 This circuit has held that "a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." Cornwell v. Dahlberg, 963 F.2d 912, 916 (6th Cir.1992). To determine whether Henning's right of privacy was violated, we must examine whether prison officials' actions were "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987) cited in Cornwell, 963 F.2d at 916. This determination requires weighing several factors, such as:
 
 
 15
 (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.
 
 
 16
 Cornwell, 963 F.2d at 917.
 
 
 17
 First, construing lighters as contraband is reasonable because they present security and safety dangers within a segregation/disciplinary unit. Prison officials had reasonable suspicion to believe Henning had concealed contraband in her vagina. Here, the presence of male officers during the body cavity search was reasonably related to the legitimate interests of the safety of Henning and the officers, as well as general institutional security.
 
 
 18
 Next, Henning left officials with no reasonable alternative but to perform an involuntary body cavity search. Although officers afforded Henning several opportunities to voluntarily surrender the contraband, she refused. Recognizing the danger of the lighter concealed in Henning's vagina, her clearly articulated refusal to voluntarily surrender the object, and her continued physical resistance, officials had no reasonable alternative to performing the search, employing male officers to secure Henning.
 
 
 19
 Additionally, recognizing the lighter posed a danger to both Henning and others, and Henning's unwillingness to surrender the object, officials were not required to funnel limited prison resources into monitoring Henning until she voluntarily discharged the lighter from her vagina.
 
 
 20
 Having weighed the Cornwell factors and determined the prison officials' involuntary search was reasonably related to legitimate penological interests, we hold the district court properly found no genuine issue of fact as to Henning's right of privacy claim.
 
 B.
 
 21
 Henning next argues the district court erred in rejecting her claim of excessive force. After reviewing the videotape of the entire incident, the district court found that, under the circumstances, the defendants used reasonable force. We agree.
 
 
 22
 To determine whether force was excessive we inquire whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973) (Friendly, J.), cert. denied sub nom., John v. Johnson, 414 U.S. 1033 ( cited in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Absent physical harm, a plaintiff must establish the infliction of pain was "unnecessary and wanton." McHenry v. Chadwick, 896 F.2d 184, 187 (6th Cir.1990). In determining whether force is excessive, this court considers "the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted." Parrish v. Johnson, 800 F.2d 600, 604-05 (6th Cir.1986).
 
 
 23
 The officers' and Gooch's actions were necessary to restore institutional security and limit harm the contraband may have caused. In addition, prison personnel executed the search responsibly and in good faith. Henning's genitals remained covered, she was not physically injured, and upon realizing they could not retrieve it, officials called a physician rather than continuing and risking injury to Henning. There is no evidence the officers or Gooch inflicted any more discomfort than reasonably necessary to recover the object.
 
 
 24
 In contrast, Noe's statement of "that's okay, I'm sure she's no stranger to a rear entry," in addition to violating NTC policy, failed to reflect good faith in professionally maintaining safety and discipline. Mere verbal abuse, however, is insufficient to establish a constitutional deprivation under 42 U.S.C. Sec. 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.1987). While the comment may evidence a lack of good faith, we are unprepared to say it revealed a malicious or sadistic purpose, especially in light of Noe's later inquiries about Henning's health and comfort. Further, Noe's search was not excessive; it lasted only ten minutes, and was reasonably necessary to secure the lighter. Noe did not injure Henning. Thus, we find the district court correctly concluded no reasonable jury could find Noe used excessive force.
 
 C.
 
 25
 Finally, Henning claims the district court erroneously determined the Prison Adjustment Committee did not deny her procedural due process rights by refusing to watch the videotape of the incident before imposing disciplinary charges upon her. The district court found that because the videotape showed Henning attempting to bite corrections officers, it did not establish her innocence. She was therefore not injured by the Adjustment Committee's refusal to watch the tape. We agree.
 
 
 26
 Although inmates enjoy a constitutionally protected right to present witnesses and evidence during disciplinary hearings, prison officials have discretion to reasonably limit the accused's presentation of evidence. Wolff v. McDonald, 418 U.S. 539, 566 (1974). Realizing the practicalities and charged atmosphere of prisons, courts only require that prison review boards support their holdings with "some evidence" to ensure due process. Higgs v. Bland, 888 F.2d 443, 449 (6th Cir.1989); Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 455-56 (1985).
 
 
 27
 The record reflects the evidence introduced against Henning was sufficient to satisfy the "some evidence" requirement. Additionally, the videotape shows Henning attempted to bite Barto and thus is not exculpatory, but inculpatory. Therefore, the Adjustment Committee reasonably exercised its discretion in refusing to view the videotape. The district court correctly found Henning's due process rights were not violated by the Adjustment Committee's refusal to consider the video tape and properly granted summary judgment on this issue.
 
 III.
 
 28
 We, therefore, AFFIRM the grant of summary judgment in favor of the Defendants-Appellees by the Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation